# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 908-337-1426 • FAX: 908-516-2049 • WEB: WWW.FBRLLP.COM

EMAIL: PRocco@fbrllp.com

February 17, 2022

**BY ECF**

The Honorable Brian M. Cogan
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Force, et al. v. Qatar Charity, et al.,* **No. 1:20-cv-02578-BMC**

Dear Judge Cogan:

On February 14, 2022, Defendants Qatar Charity, Qatar National Bank ("QNB"), and Masraf al Rayan ("Masraf") filed motions to dismiss the Complaint, including on the grounds that they are not subject to personal jurisdiction in this Court and that service of process was insufficient. *See* ECF 55-1 at 32-43; ECF 56-1 at 5-16; ECF 58 at 8-18, 35. Having reviewed Defendants' memoranda of law, Plaintiffs now renew their request for an order authorizing limited jurisdictional discovery. In connection with that request, Plaintiffs submit herewith proposed discovery requests directed to Qatar Charity (Exhibits 1-3) and the Defendant banks (Exhibits 4-6). Plaintiffs also request an extension of their time to respond to Defendants' motions, and seek a conference with the Court preliminary to moving for an order authorizing alternative service of process on all three Defendants under Fed. R. Civ. P. 4(k)(3).

## Request for Limited Jurisdictional Discovery

At the recent pre-motion conference, the Court deferred ruling on Plaintiffs' request for immediate jurisdictional discovery pending an opportunity for the Court and Plaintiffs' counsel to review Defendants' arguments in support of their motions to dismiss. *See* Transcript of January 28, 2022 Pre-motion Conference ("1/28 Trans.") at 31:23-32:13, 33:16-34:1. Having had that opportunity, Plaintiffs now renew, with greater specificity, their request for limited written and documentary jurisdictional discovery, including service of subpoenas *duces tecum* on the Defendant banks' New York correspondent banks, and to conduct one Rule 30(b)(6) deposition of each Defendant.

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "It is well-settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish personal jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007). "[D]istrict courts in this Circuit have ordered jurisdictional discovery where plaintiff made less than a *prima facie* showing but 'made a sufficient start toward establishing personal jurisdiction.'" *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2006) (quoting *Uebler v. Boss Media*, 363 F. Supp. 2d 499, 506-07 (E.D.N.Y. 2005)).



In response to Defendants' Rule 12(b)(2) motions, Plaintiffs will demonstrate a *prima facie* case that personal jurisdiction exists as to each Defendant under New York CPLR § 302(a)(1) because Plaintiffs' claims arise from each Defendant's purposeful transaction of business in New York. Specifically, Plaintiffs will show that Defendants used correspondent banks in New York—as their agents or subagents—to effectuate inter-bank transfers of U.S. dollars that financed Hamas and Palestinian Islamic Jihad (the "FTOs"), the foreign terrorist organizations that killed or injured Plaintiffs and their loved ones. *See, e.g., Official Comm. of Unsecured Creditors of Arcapita Bank, B.S.C. v. Bahr. Islamic Bank*, 549 B.R. 56, 67-68 (S.D.N.Y. Mar. 30, 2016) ("[T]he use of a correspondent bank account, even if the defendant has no other contacts with New York, satisfies the first prong of New York's long-arm statute so long as the use was purposeful and not coincidental or adventitious."); RESTATEMENT (THIRD) OF AGENCY § 3.15 cmt. a (2006) ("[A] principal's legal position is affected by action taken by the subagent as if the action had been taken by the appointing agent.").

In the alternative, Plaintiffs will demonstrate a *prima facie* case of personal jurisdiction with respect to Defendants Qatar Charity and QNB pursuant to Fed. R. Civ. P. 4(k)(2), which authorizes jurisdiction where: (a) a plaintiff asserts a federal claim; (b) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"; and (c) "exercising jurisdiction is consistent with the United States Constitution and laws." Even if the CPLR did not permit the exercise of personal jurisdiction over parties whose agents and co-conspirators engage in in-forum conduct, federal law does authorize "conspiracy jurisdiction" in those circumstances. *See, e.g., Allianz Global Inv'rs GMBH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 408 (S.D.N.Y. 2020) (personal jurisdiction exists where defendants' "connection to the forum state arises from participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy") (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86-87 (2d Cir. 2018)). Because Plaintiffs' claims arise under federal law, and Defendants have identified no other state in which this suit can proceed,[1] and the Constitutional due process test is easily satisfied here, Plaintiffs will demonstrate that Rule 4(k)(2) provides an alternative basis for personal jurisdiction. *See Rudersal v. Harris*, 2022 U.S. Dist. LEXIS 16004, at *5 (S.D.N.Y. Jan. 28, 2022) ("[A]s dicta, the Court concludes that a plaintiff may plead personal jurisdiction under Rule 4(k)(2) using a theory of conspiracy jurisdiction because the Second Circuit has expressly held that conspiracy jurisdiction is consistent with Constitutional Due Process….") (citing *Charles Schwab Corp.*, 883 F.3d 68).[2]

---

[1] *See, e.g., Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009) (following Fifth, Seventh, Ninth, Eleventh, and D.C. Circuit precedent in finding that "a court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed").

[2] Courts frequently divide the Constitutional due process analysis into two components: the "'minimum contacts' inquiry and the 'reasonableness' inquiry." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). Other cases break the due process test into three parts: (1) whether the defendant "'purposefully availed itself of the privilege of conducting activities within the forum State or … purposefully directed its conduct into the forum State;'" (2) whether "'the plaintiff's claim … arise[s] out of or relate[s] to the defendant's forum conduct;'" and



All three Defendants argue that Plaintiffs' factual allegations concerning Defendants' purposeful use of New York correspondent bank accounts lack sufficient specificity to make out a *prima facie* showing of personal jurisdiction. *See* ECF 55-1 at 32-38; ECF 56-1 at 8, 10; ECF 58 at 12-18. QNB argues that the Complaint "is bereft of any specific allegation that QNB transferred any funds through any New York bank." ECF 56-1 at 8, 10. According to Masraf, the Complaint fails to specify a sufficient number of U.S. dollar transfers to constitute "'frequen[t] and deliberate … use of its correspondent account'" in New York. ECF 55-1 at 34 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) ("*Licci IV*")). *See also id*. at 35 ("'use of the correspondent account' must be 'repeated'") (quoting *Licci IV*, 732 F.3d at 173). Masraf even contends that Plaintiffs' detailed allegation that, during 2015, Masraf transferred over $28 million belonging to Qatar Charity through a New York correspondent account to accounts in the Palestinian administered territories (*see* Complaint at ¶¶ 130-33) is too "generalized" to be credited. *See* ECF 55-1 at 34.

In challenging the sufficiency of Plaintiffs' allegations, Defendants ignore that this case builds upon criminal allocutions in which the Director and staff of the Qatar Charity branch in the Palestinian administered territories confessed to laundering U.S. dollars for Hamas through a New York correspondent account. *See* Complaint at ¶¶ 132-33. Those facts, in combination with Plaintiffs' allegations that Defendants advanced their conspiracy by moving millions of dollars through the U.S. banking system, easily suffice to set forth a *prima facie* case for exercising personal jurisdiction over each Defendant. *See, e.g., Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340-41 (2012) (finding personal jurisdiction over defendant where it used a New York correspondent bank to "effect its support of [its customer] and shared terrorist goals"); *Arcapita Bank*, 549 B.R. at 72 (concluding that the defendants' "selection and use of correspondent bank accounts in New York provides a sufficient basis for a court to assert personal jurisdiction over them").

Other facts Plaintiffs allege provide further reason to believe that discovery will unearth additional evidence supportive of exercising personal jurisdiction. For example, each Defendant is controlled, as a practical matter, by the autocratic Qatari government, which has openly funded Hamas since 2006 and served as Hamas's primary funder from 2012 to 2018. *See* Complaint at ¶¶ 85, 88, 96-97, 120-27. QNB has distinguished itself as the go-to bank for convicted Hamas terrorists released in connection with "prisoner exchanges" that the FTOs extorted by kidnapping Israeli soldiers. *See id*. at ¶¶ 157-81, 377. Moreover, QNB has placed Yousuf Abdulla Al-Qaradawi on its Sharia Advisory Board although he serves as Chairman of the Union of Good, a U.S. government-designated terrorist organization that the U.S. Treasury Department described as "an organization created by Hamas leaders to transfer funds to the terrorist organization." *See id*. at ¶¶ 169-76. QNB appointed Al-Qaradawi to that position although he has issued religious rulings inciting Muslims to join jihadist groups, "justified" suicide bombings, and fomented attacks against U.S. and international forces in the Middle East. *See id*. at ¶ 175.

In light of these facts, only wishful thinking supports Defendants' claims that Plaintiffs' allegations fail to provide a factual basis for permitting the limited discovery Plaintiffs seek. In fact, the Complaint, the admissions of Qatar Charity's officers and staff, and Qatar's notorious

---

(3) whether exercising jurisdiction is "'reasonable under the circumstances.'" *United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*, 916 F.3d 143, 150 (2d Cir. 2019) (citation omitted).



support of Hamas compel the inferences that Defendants fully support the FTOs and their violent mission, and have used the U.S. banking system to further the FTOs' objectives.

Moreover, while Plaintiffs reject the argument that they must provide additional detail regarding Defendants' secret transactions at the motion to dismiss stage, the discovery Plaintiffs seek undeniably provides the *only* potential avenue for acquiring that information. With the exception of the facts revealed by Qatar Charity's convicted officials, Defendants have managed to maintain the veil of secrecy necessary to continue their conspiracy. Thus, only Defendants (who share an obvious interest in concealing their illicit conduct) and their bankers (who are duty-bound to maintain the secrecy of Defendants' financial information) know the dates and amounts of the U.S. dollar transactions Defendants conducted in furtherance of their conspiracy.

But Defendants' relative success, to date, in maintaining the secrecy of certain details they claim Plaintiffs must plead does not suggest discovery would fail to reveal further information supporting Plaintiffs' already robust allegations. In these circumstances, the Court should exercise its substantial discretion to permit Plaintiffs a reasonable opportunity to examine the actual facts relevant to Defendants' less-than-credible claims of innocence and denials concerning their contacts with New York. *See, e.g.*, *Hollins*, 469 F. Supp. 2d at 71-72 (granting jurisdictional discovery and differentiating between "insufficiently developed" allegations and "'sparse' and 'conclusory'" ones); *Leon*, 992 F. Supp. 2d at 194-96 (exercising discretion to order jurisdictional discovery where the plaintiffs' claims were "sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record"); *Ayyash v. Bank Al-Madina*, 2006 U.S. Dist. LEXIS 9677, at *16-*21 (S.D.N.Y. Mar. 9, 2006) (permitting jurisdictional discovery fell within the court's "considerable discretion" where the complaint alleged use of the U.S. banking system to perpetuate a conspiracy and to distance certain defendants from that conspiracy).

Furthermore, the limited discovery Plaintiffs seek will provide precisely the type of detail concerning specific transactions that Defendants claim Plaintiffs must prove in order to establish personal jurisdiction. For example, Plaintiffs seek evidence of the U.S. dollar transfers the Defendant banks made through their New York correspondent accounts on behalf of Qatar Charity during the period of the alleged conspiracy (*i.e.*, January 1, 2011 through December 23, 2016 (*see* Complaint at ¶¶ 58, 111, 321)). *See* Ex. 2 at Document Request ("DR") 2; Ex. 3 at ¶¶ 3, 4; Ex. 4 at Interrogatories 1, 3; Ex. 5 at DR 4, 5; Ex. 6 at ¶¶ 5, 6. Those transactions are indistinguishable from the transfers the Second Circuit found sufficient to confer jurisdiction over a foreign bank utilizing a New York correspondent account in *Licci* (*see, e.g., Licci IV*, 732 F.3d at 168-69; *see also Peterson v. Islamic Republic of Iran,* 2013 U.S. Dist. LEXIS 40470, at *84-85 (S.D.N.Y. Mar. 13, 2013), *aff'd,* 758 F.3d 185 (2d Cir. 2014), *aff'd,* 578 U.S. 212 (2016)), and will negate Defendants' argument that Plaintiffs cannot show that their claims "arise from" or are "related to" the New York transactions. *See* ECF 55-1 at 36-38; ECF 58 at 15-16.

For its part, Qatar Charity asserts that there is no "plausible factual allegation" that it knew that the bank Defendants maintained correspondent banking relationships with New York banks or used the U.S. banking system to route U.S. dollar payments to and from Qatar Charity's accounts. *See* ECF 58 at 12-14. As an initial matter, this claim ignores the fact that nearly all U.S. dollar



transactions of the magnitude of Defendants' transfers clear through New York banks.[3] However, the discovery Plaintiffs seek regarding the nature of Qatar Charity's agency relationships with the Defendant banks and Defendants' communications regarding their transactions will provide the otherwise-unknowable details Qatar Charity demands regarding its own knowledge. *See* Ex. 1 at Interrogatory 1; Ex. 2 at DR 1, 3, 5; Ex. 3 at ¶¶ 1, 5; Ex. 4 at Interrogatory 2; Ex. 5 at DR 1, 2, 6, 8; Ex. 6 at ¶¶ 2, 7.[4] Evidence of the extent to which Qatar Charity uses U.S. dollars, rather than any other currency, to carry out its purposes in a total of 58 different countries is also relevant to the state of its knowledge concerning the near-universal role of New York correspondent banks in effectuating U.S. dollar electronic transfers. *See* Ex. 1 at Interrogatories 2, 3. Finally, because Qatar Charity challenges the credibility of Plaintiffs' allegation that U.S. dollars transferred from Qatar to the Palestinian administered territories would necessarily have passed through a New York correspondent account (*see* ECF 58 at 12-13, 17), Plaintiffs seek discovery from all Defendants concerning the "other alternatives" for making such inter-bank U.S. dollar transfers supposedly available to them. *See* Ex. 1 at Interrogatory 4; Ex. 3 at ¶¶ 2, 5; Ex. 4 at Interrogatories 4, 5; Ex. 6 at ¶¶ 1, 3, 4.

In an effort to evade conspiracy jurisdiction, QNB argues that the allegations concerning its participation in Defendants' conspiracy are "wholly conclusory," and that Plaintiffs merely assert that it "provided routine banking services *in Doha, Qatar* to certain individuals with alleged ties to terrorist organizations." ECF 56-1 at 13-14. It bears mentioning that the "certain individuals" to whom QNB refers include *multiple* U.S. government-designated terrorists whose resumes feature convictions for murdering innocent civilians in terrorist attacks. *See* Complaint at ¶¶ 114-17, 157-76. Putting aside QNB's continued disregard for the savagery of its customer base, the discovery Plaintiffs seek will provide further details regarding QNB's participation in Defendants' conspiracy. Specifically, Plaintiffs seek limited discovery of pertinent communications among the Defendants, and records of QNB's due diligence with respect to customers with ties to FTOs. *See* Ex. 2 at DR 4; Ex. 3 at ¶ 6; Ex. 5 at DR 3, 7; Ex. 6 at ¶¶ 8, 9, 10. That information will further

---

[3] *See, e.g., Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 370 (1991) (large-value transfers of USD must pass through the U.S., and New York banking enterprises participate in nearly all such transactions); Amicus Brief of Institute of International Bankers *et al.* filed Sept. 25, 2019 in *Strauss v. Credit Lyonnais*, No. 19-865 (L) (2d Cir.) at 12 ("Dollar-denominated payments, wherever they originate and wherever their ultimate destination, generally 'clear' in the United States, through a U.S. bank.").

[4] Qatar Charity's awareness of its subagents' in-state activities is ultimately an issue "'for resolution by the trier of fact.'" *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (quoting *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999)); *accord, e.g., Linde v. Arab Bank, PLC*, 882 F.3d 314, 330 (2d Cir. 2018) (finding itself "obliged to vacate and remand for a jury to decide that question [of scienter]" and noting that "traditionally a jury resolves questions about a tortfeasor's state of mind") (internal citations omitted). *Accord Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 154 (S.D.N.Y. 2000) ("Scienter is generally a question of fact that can be proved with circumstantial evidence.").



support Plaintiffs' allegations that each Defendant agreed to advance the Qatari government's support for the FTOs and, therefore, for exercising jurisdiction over QNB.

**Request for Extension of Time for Plaintiffs' Opposition to Defendants' Motions to Dismiss**

Pursuant to the Court's January 28, 2022 minute order, Plaintiffs' response to Defendants' motions to dismiss is currently due on February 28, 2022. Plaintiffs respectfully request that this deadline be extended until 30 days after the completion of jurisdictional discovery. Alternatively, in the event that the Court declines to grant jurisdictional discovery at this time, Plaintiffs request that the current deadline for Plaintiffs' response be extended to March 31, 2022 (45 days after Defendants filed their motions). There has been no prior request to extend the deadline for Plaintiffs' response.

**Request for Pre-Motion Conference on Motion for Order Authorizing Alternative Service**

In their motions to dismiss, all three Defendants challenge the sufficiency of service (*see* ECF 55-1 at 42-43; ECF 56-1 at 6-7; ECF 58 at 35), notwithstanding the Court's request that they refrain from so doing (*see* 1/28 Trans. at 4:21-8:14), and the fact that service pursuant to letters rogatory is currently in process after an extended government delay precipitated by the pandemic. *See* ECF 54 at 4 (letters rogatory transmitted by U.S. Embassy in Doha to Qatari Ministry of Foreign Affairs on December 20, 2021). In the interest of obviating Defendants' "dilatory" motion practice (*see* 1/28 Trans. at 8:3-9), Plaintiffs respectfully request permission to move for an order under Rule 4(f)(3) directing service of process on the Defendants by e-mails sent to their respective counsel of record in this action. *See, e.g., Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 222, 225-26 (S.D.N.Y. 2021) (granting leave to serve Swedish defendants via email sent to their counsel of record); *NYKCool A.B. v. Pacific Int'l Servs.*, 2015 U.S. Dist. LEXIS 27434, at *8-16 (S.D.N.Y. Mar. 5, 2015) (overruling objections to Magistrate Judge's order authorizing service on attorneys who had appeared in the action to challenge service and personal jurisdiction on behalf of foreign defendant).

"Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief." *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 341 (E.D.N.Y. 2021) (internal quotation omitted). It is "committed to the sound discretion of the district court … so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Id*. at 342 (internal quotations omitted). "The Due Process Clause requires that the alternative means of service be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. at 344 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). Moreover, "it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)-(2) before resorting to service under Rule 4(f)(3)." *NYKCool A.B*., 2015 U.S. Dist. LEXIS 27434, at *9. The Defendants will ultimately be served via letters rogatory. In the meantime, the Court should put to rest their pointless challenges to the sufficiency of the service that indisputably has apprised them of the pendency of this action.

Respectfully submitted,

*/s/ Patrick L. Rocco*

Patrick L. Rocco

**Exhibits:**

| | |
|---|---|
| 1 | Proposed Jurisdictional Interrogatories to Qatar Charity |
| 2 | Proposed Jurisdictional Requests for Production to Qatar Charity |
| 3 | Proposed Jurisdictional Rule 30(b)(6) Topics for Qatar Charity |
| 4 | Proposed Jurisdictional Interrogatories to Defendant Banks |
| 5 | Proposed Jurisdictional Requests for Production to Defendant Banks |
| 6 | Proposed Jurisdictional Rule 30(b)(6) Topics for Defendant Banks |

CC: All counsel of record (via ECF)