

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

February 22, 2022

Michael G. McGovern
T +1 212 841 8860
michael.mcgovern@ropesgray.com

**BY ECF**

The Honorable Brian M. Cogan
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Force, et al. v. Qatar Charity, et al.*, No. 20-cv-2578 (BMC)

Dear Judge Cogan,

  Pursuant to Rule III.A.2 of Your Honor's Individual Practices, Qatar National Bank Q.P.S.C. ("QNB") writes in response to Plaintiffs' letter motion dated February 17, 2022, ECF No. 60 (the "Letter"). QNB renews its objection to jurisdictional discovery occurring before Plaintiffs have responded to QNB's Motion to Dismiss Plaintiffs' Complaint, ECF No. 56 & 56-1 (the "Motion"), and accordingly objects to Plaintiffs' request for an open-ended extension of time to respond to the Motion. As we establish below: 1) Plaintiffs' request for jurisdictional discovery as to QNB is improper; 2) Plaintiffs' request for jurisdictional discovery as to QNB is, at best, premature given the strength of QNB's pending motion to dismiss Plaintiffs' threadbare ATA/JASTA claims under Fed. R. Civ. P. 12(b)(6); and 3) alternative service under Fed. R. Civ. P. 4(f)(3) should be denied.

**Plaintiffs' Request for Jurisdictional Discovery as to QNB Is Improper.**

  Plaintiffs concede, as they must, that they have yet to make a *prima facie* showing of personal jurisdiction over QNB. *See* Letter at 2. Nonetheless, they ask that the Court afford them invasive, broad-ranging discovery as to QNB based on the dubious assertion that they have made a "sufficient start" toward such a showing. Letter at 1 (quoting *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2006)). While this Court *may* order jurisdictional discovery even in the absence of a *prima facie* showing of personal jurisdiction, a plaintiff is "[o]bviously . . . not entitled to such discovery in every situation, but rather only when the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 195 (E.D.N.Y 2014); *Ayyash v. Bank Al–Madina*, No. 04-cv-9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (discovery not warranted without "a threshold showing that there is some basis for the assertion of jurisdiction [and] facts that would support a colorable claim of jurisdiction."). Where, as is the case with QNB, a defendant challenges only the *legal basis* for a plaintiff's assertion of personal jurisdiction, jurisdictional discovery is not appropriate. *Langenberg v. Sofair*, No. 03-cv-8339 (KMK), 2006 WL 2628348, at *6 (S.D.N.Y.

Sept. 11, 2006) ("As a rule, a plaintiff is not entitled to jurisdictional discovery to enable her to bolster an inadequate pleading if the defendant merely challenges the legal sufficiency of the jurisdictional allegations in the complaint, and does not place the factual basis for personal jurisdiction in issue.").

Each of Plaintiffs' proffered bases for their "conspiracy" theory of personal jurisdiction fails as a matter of law. As explained in QNB's opening brief, a conspiracy theory of personal jurisdiction is not available under Section 302(a)(1) of New York's long arm statute. *See* Motion at 9-12. Having now realized that their theory of personal jurisdiction fails as a matter of New York law, Plaintiffs attempt to invoke Fed. R. Civ. P. 4(k)(2). *See* Letter at 2. To invoke that provision, however, Plaintiffs would first need to certify to this Court that QNB is not subject to personal jurisdiction in *any* state. *See* Fed. R. Civ. P. 4(k)(2)(A); *Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 05-cv-4880 (CBA), 2007 WL 4326793, at *8 (E.D.N.Y. Dec. 7, 2007) ("[T]he plaintiff must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state."); *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 134 (S.D.N.Y. 2020) (collecting cases) (same); *see also Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 127 (1st Cir. 2022) ("The certification is a necessary component of the showing that the plaintiff must make [under Rule 4(k)(2)]."). Rather than make that requisite showing, Plaintiffs are arguing the exact opposite. Because each of Plaintiffs' legal theories for assertion of jurisdiction over QNB fails as a matter of law, they have not made even a "sufficient start" toward establishing personal jurisdiction over QNB in this forum. Accordingly, their request for jurisdictional discovery should be denied as improper.

Finally, the legal deficiencies of Plaintiffs' theories of personal jurisdiction are not remedied by their rank speculation that QNB must have "used the U.S. banking system to further the FTOs' objectives." Letter at 3-4. Rather, this is precisely the kind of "entirely speculative and insufficient" assertion that courts repeatedly have rejected as a basis for jurisdictional discovery. *See, e.g.*, *Century Sports, Inc. v. Ross Bicycles, LLC*, No. 19-cv-4842 (JS) (ARL), 2021 WL 1108639, at *5 (E.D.N.Y. Mar. 23, 2021). A plaintiff cannot simply assert that defendants "*undoubtedly* included New York" transactions, *id.*, which is all Plaintiffs do here. *See* Letter at 2 (expressing hope that discovery "will show that Defendants [including QNB] used correspondent banks in New York . . . to effectuate inter-bank transfers of U.S. dollars that financed Hamas and [PIJ]"). "Whatever speculations or hopes plaintiff may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery." *Rosenberg v. PK Graphics*, No. 03-cv-6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004). The fact that Plaintiffs make no effort to distinguish their proposed discovery requests to MAR from those to QNB, despite the significant differences in how the banks are situated within the Complaint's allegations (particularly in regard to personal jurisdiction), confirms that this is nothing more than a fishing expedition into QNB that the Second Circuit has held to be impermissible. Discovery would do nothing but waste QNB's and the Court's resources in an attempt to salvage their legally deficient theories. Plaintiffs have "a problem of kind, not degree—[they] need[] new jurisdictional theories, not more evidence substantiating the theories [they have] already

advanced." *Trachtenberg v. FailedMessiah.com*, 43 F. Supp. 3d 198, 205 (E.D.N.Y. 2014) (Cogan, J.) (denying plaintiffs' request for limited jurisdictional discovery).

**Plaintiffs' Request for Jurisdictional Discovery Is Premature in Light of QNB's Arguments Under Rule 12(b)(6).**

Even were the Court to overlook the legal deficiencies of Plaintiffs' theories of personal jurisdiction as to QNB, the Court should deny their request for jurisdictional discovery as a premature effort "to put the cart before the horse." As the Court noted at the pre-motion conference, it needs to consider the strength of QNB's 12(b)(6) arguments before addressing whether any such discovery is warranted at all. *See* Jan 28, 2022 Tr. at 33:21-24 ("[F]rankly, when I've read in detail the defendant motions, I may be able to form a view as to how likely it is that the case might go completely away so that we don't need discovery."). Permitting jurisdictional discovery ahead of full briefing and consideration of the pending motions to dismiss would essentially lead to a "mini-litigation on the threshold issue," which "should be avoided if possible," as this would "introduc[e] a preliminary round that could last months just to get to square one." *Northfield Ins. Co. v. GM Star Constr., Inc.*, 532 F. Supp. 3d 73, 74 (E.D.N.Y. 2021) (Cogan, J.) (denying jurisdictional discovery).

The strength of QNB's 12(b)(6) arguments, as well as the thinness of Plaintiffs' allegations, counsels this reasonable approach, and Plaintiffs should be required to address the numerous, flagrant deficiencies in their primary and secondary liability claims against QNB before obtaining any discovery. *See, e.g.*, *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 511 (S.D.N.Y. 2010) ("The resolution of a motion to dismiss for failure to state a claim is not dependent on matters disclosed during jurisdictional discovery. A Rule 12(b)(6) motion tests the sufficiency of the plaintiffs' pleadings. A defendant is *not put to the onerous task of engaging in intrusive and expensive discovery in order to assist a plaintiff in the hopes of uncovering evidence of an actionable wrong,* so as to justify the maintenance of the action." (emphases added)). As other courts have observed, "[i]f sparse jurisdictional allegations, like those in this case, could force a foreign defendant to submit to discovery, the federal courts would be required 'to conduct substantial jurisdictional discovery over foreign corporations—a practice in which they have not hitherto engaged.'" *In re Teligent, Inc.*, No. 01-12974 (SMB), 2004 WL 724945, at *6 (Bankr. S.D.N.Y. Mar. 30, 2004) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998)). Thus, the Court should deny Plaintiffs' request for jurisdictional discovery, as well as their request for an open-ended extension of time to respond to QNB's motion to dismiss.

**Alternative Service Under Fed. R. Civ. P. 4(f)(3) Should Be Denied.**

Instead of addressing QNB's argument that Plaintiffs' attempted service under Fed. R. Civ. P. 4(f)(2)(C)(ii) is plainly insufficient (because Qatari law *prohibits* their attempted method of service), Plaintiffs now switch tracks and invoke Fed. R. Civ. P. 4(f)(3) in order to effect alternative service on Defendants by e-mail to their respective counsel. Their arguments do nothing to address the legitimate concerns surrounding the exercise of sovereign power in the

ROPES & GRAY LLP                               - 4 -                              February 22, 2022

territory of another without its consent.  See Motion at 6 (citing *AG of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 111 n.6 (2d Cir. 2001)).

      While it is true that the "decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court," *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 342 (E.D.N.Y. 2021) (internal quotation marks omitted), Plaintiffs ignore certain important caveats here.  First, "before ordering alternative service under Rule 4(f)(3), some courts have required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) *a showing that the circumstances are such that the court's intervention is necessary*."  *In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-cv-1105 (JMA) (ARL), 2019 WL 259778, at *4 (E.D.N.Y. Jan. 9, 2019) (emphasis added), *R&R adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019).  Plaintiffs represent that the letters rogatory process is well underway, noting in their pre-motion letter that "service pursuant to letters rogatory is currently in process *after* an extended government delay precipitated by the pandemic."  Letter at 6 (emphasis added).  Plaintiffs do not represent that any *future* delays are anticipated, and they represent their ironclad certainty that the Defendants *will* be served via letters rogatory.  *See id*.  Therefore, by Plaintiffs' own representations, the Court's intervention is not necessary in this context (and separately would place any final judgment on less firm ground when it comes to enforcement within Qatar).  Second, one of the justifications for the necessity inquiry, as "[s]ome courts have held[, is] that *principles of comity* encourage the court to insist, as a matter of discretion, a plaintiff attempt to *follow foreign law* in its efforts to secure service of process upon defendant."  *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (emphases added) (internal quotation marks omitted).  Indeed, the Committee Notes to Rule 4(f)(3) note that "an earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*."  Fed. R. Civ. P. 4(f)(3), Notes of Advisory Committee on Rules – 1993 Amendment (emphasis added).  Here, where Plaintiffs' method of service is ostensibly *prohibited* by Qatari law,[1] service other than by letters rogatory or through relevant Qatari authority would *maximize* offense to foreign law, in contravention of principles of comity.  QNB recognizes the Court's discretion in this matter and encourages the Court to exercise that discretion by allowing service to be *properly* effected in this case in denying Plaintiffs' motion for alternative service under Rule 4(f)(3).

                                                   Respectfully submitted,

                                                 */s/ Michael G. McGovern*
                                                 Michael G. McGovern
                                                 Douglas Hallward-Driemeier (*pro hac vice*)

cc:    All counsel of record (by ECF)

---

[1] Article 2 of the same law cited by Plaintiffs' first pre-motion letter clearly states that "*[e]very* summons or execution *shall* be served through the police or any other authority appointed by the President of the Supreme Judicial Council," with the only carveout being for a Qatari court to effect service by registered mail.  *See* Qatar Civil and Commercial Procedure Law (Law No. 13 of 1990), https://www.almeezan.qa/LawArticles.aspx?LawTreeSectionID=8075&lawId=2492&language=en (emphases added); *see also* ECF No. 54 at 2 (citing same law).  This language suggests that Plaintiffs' method of service is *prohibited* by Qatari law.