# EXHIBIT 7

-unclassified-



Israeli Defense Force

**Military court of appeals**                                                                 Appeal case 2731/15

**Before the honorable vice president: Lieutenant colonel Zvi Lekach**

**The appellant: Najwan Mohammed Iman Hassan Awda, ID *********

(via representative Adv. Ismahil Twill)

**Versus**

**The respondent: military prosecution**

(via representative captain Asher Silver)

Appeal against the decision of the Military Court in Judea (before the Honorable Justice Lt. Col. Hanan Rubinstein)

In case No. 6014/15 dated 07.10.15

(The appeal is dismissed)

Meeting date: October 12, 2015, 29 of Tishrei 5766.

**Decision**

The appellant worked from 2010 to 2015 in the Qatar Al-Khiriya (Qatar Charity) association.

She was responsible for logistics, recruiting employees for the association, writing and publishing news in the association's newsletter, and contacting contractors for the purpose of executing the association's projects. During the appellant's period of employment in the association, many funds were transferred into the area, in the amounts of millions of shekels.

In respect of these facts, an indictment was filed against the appellant, which includes membership and activity in an illegal association, holding an office in an illegal association, and bringing enemy funds into the area. It must be said that the prosecution's motion for the appellant's detention until the end of the proceedings was accepted, hence the appeal before me.

The dispute between the parties does not concern the facts set out above, and it lies in the question of whether the appellant worked as part of an illegal association, as well as on the question of whether she held a significant or minor position in the same association.

According to the defense attorney, the appellant worked for a legitimate charity, which received all the approvals from the Palestinian authority, hence she did not commit any offense of activity or holding office in an illegal association. Second, it shall be argued that the appellant was a clerk only, and therefore could not at all be regarded as a bearer of a position or acted in a manner that indicates significant risk.

In contrast, the prosecution argued that the association within which the appellant acted was declared an unauthorized association already in 2008, about two years before the appellant started working for it, and that is enough to substantiate the offense. Furthermore, it is argued that the appellant, in her own words, did not play a minor role, but a significant role, hence that the appeal should be dismissed.

**Discussion and ruling**

First, the contention that the appellant acted within a legitimate organization must be rejected. The trial court relied on the declaration signed on May 26, 2008 by the Minister of Defense, in which the organization the appellant worked in is also enumerated. The problem is, that this declaration does not apply in the region, but in the territories of the State of Israel, and reliance on this declaration is therefore wrong. At the same time, it does not help the appellant, since the charity of Qatar, or Jama'at Qatar Al-Khiriya, has also been declared an illegal association in the area by the center General Officer Commander, on June 29, 2008 (see military police officer 225, p. 5283). The declaration explicitly states "including branches in the PA territories". Thus, even if the association has received approval from the PA, this does not negate it being an unauthorized association.

As stated, the appellant admitted that she acted within the framework of this organization, and her claim that she did not know that this was an illegal association, is an allegation of ignorance of the law, which cannot be accepted.

Secondly, the status of the appellant in the organization should be addressed. Indeed, there is no dispute that the appellant was not the director of the organization. At the same time, it is clear from her own remarks in her police investigation that her role in the organization was not marginal. The appellant held a managerial position, which included various powers, including contracting with private contractors, employment of employees and organizing activities and projects for the organization. This is a clear managerial position, which places the appellant at the top of the organization's administrative system, even if not at its head. Hence that the claim of being a "clerk only" must be rejected as well.

The aforesaid facts teach both about danger and about fear of escaping judgement. Administrative activity within an unauthorized association, indicates inherent danger. The global terrorist system not only works at the military level, but also at the civilian level, for the "indoctrination" and obtaining funding for the sake of military activity (compare military verdict appeal 1704/14 **the military prosecution v. Belauna** (published in Nevo, 11.12.2014), and the ruling mentioned there). The Supreme Court recently stated this in criminal appeal 1784/14 **Ahshur v. The State of Israel (**published in Nevo, 3.9.2015):

> "Terrorist organizations do not grow out of thin air, and do not feed on air.
>
> Terrorist organizations, and Hamas among them, as much as the organizational framework that unites humans and harnesses them to advance a common goal - need significant budgets and a basis of social support for their ongoing activities. Therefore, they must rely, on the one hand, on a "military" arm whose job is to carry out the terrorist acts, and on the other hand, on a "civilian" arm whose job is to provide the organization with the fuel that drives the military activity - money and activists.
>
> However, more than once, the 'civilian' activities of the terrorist organizations is intended
>
> for "indoctrination," meaning for an education and welfare activity designed to raise sympathy for the terrorist organization and its operatives as good and benevolent, in order to create an infrastructure for the future activities of the organization."

Thus, the financing of terrorism, done in different ways, is often disguised as an activity perceived as legitimate, as a charitable activity in nature, is a significant risk in being part of the mechanism that drives

the terrorist activity. The appellant took part in this mechanism, which included the transfer of huge sums, intended, as stated, to serve as part of the "civilian" arm of a terrorist organization.

In view of this danger, it is doubtful whether an alternative to detention should be considered. Moreover, the nature of the appellant's activity, and her status in the organization, will lead to, if convicted, a significant punishment, and thus can be used as an incentive to escape judgement. The appellant lives in the area A of the Palestinian Authority, hence that the ability to detain her again, if she escapes judgement, is extremely limited. The combination of danger from the appellant's activity as well as the concern of escaping judgement, lead to the conclusion that the trial court did not err in its decision when it ordered her detention until the end of the proceedings.

Therefore, the appeal is dismissed.

Given today, 13 October 2015, on Tishrei 5766, at the Bureau. The court secretariat will send a copy of this decision to the parties.

**Vice president**



## CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

| | |
|---|---|
| File Name(s): | Appeal, Najwan Mohammed Iman Hassan Awda v. Military Prosecution |
| Source Language(s): | Hebrew |
| Target Language(s): | English |

Authorized Signature:

*Signature, Notary Public:*



Name:   *Shayna Himelfarb*

Title:   *Project Assistant*

Date:   *April 8, 2022*

*Stamp: Notary Public*

Reason for signature: I approve the accuracy of this document content as written

---

TP-PM-401-W037-F001 Certification with Notary v.2                                    Page 1 of 1
Effective: 22-November-2019                         © 2022 TransPerfect Translations International, Inc. (TransPerfect).

-בלמ"ס-
## צבא ההגנה לישראל



בית המשפט הצבאי לערעורים      ע"מ 2731/15

לפני כב' המשנה לנשיא: סא"ל צבי לקח

**העוררת**: נג'ואן מוחמד אימן חסן עודה, ת"ז \*\*\*\*\*\*\*\*\*\*
(באמצעות ב"כ עו"ד אסמעיל טוויל)

**נגד**

**המשיבה**: התביעה הצבאית
(באמצעות ב"כ סרן אשר סילבר)

ערר על החלטת ביהמ"ש הצבאי ביהודה (בפני כב' השופט סא"ל חנן רובינשטיין)
בתיק מס' 6014/15 מיום 07.10.15
(הערר נדחה)

תאריך הישיבה: 12 באוקטובר 2015, כ"ט בתשרי התשע"ו.

## החלטה

העוררת עבדה בשנים 2010 עד 2015 בעמותה ג'מעית קטר אלח'יריה (Qatar Charity). תפקידה היה אחראית לוגיסטיקה, גיוס עובדים לעמותה, כתיבה ופרסום חדשות בעיתונות בעמותה, ויצירת קשר עם קבלנים לצורך הוצאה לפועל של פרויקטים של העמותה. במהלך תקופת עבודתה של העוררת בעמותה הועברו לתוך האזור כספים רבים, בסכומים של מיליוני שקלים.

בגין עובדות אלה הוגש נגד העוררת כתב אישום הכולל חברות ופעילות בהתאחדות בלתי מותרת, נשיאת משרה בהתאחדות בלתי מותרת, והכנסת כספי אויב לאזור. יש לומר כי בקשת התביעה למעצרה של העוררת עד תום ההליכים התקבלה, ומכאן הערר שלפניי.

המחלוקת בין הצדדים אינה נוגעת לעובדות שפורטו לעיל, וזו נעוצה בשאלה האם העוררת עבדה במסגרת התאחדות בלתי מותרת, וכן בשאלה האם היא נשאה בתפקיד משמעותי או מינורי באותה עמותה.

לטענת הסניגור, העוררת פעלה בארגון צדקה לגיטימי, שקיבל את כל האישורים מהרשות הפלסטינית, ומכאן כי כלל לא עברה עבירה של פעילות או נשיאת משרה בהתאחדות בלתי מותרת. שנית, נטען כי העוררת הינה פקידה בלבד, ועל כן כלל לא ניתן לראות בה כגורם שנשא משרה או פעל באופן המלמד על מסוכנות משמעותית.

1

לעומתו, טענה התביעה כי האגודה במסגרתה פעלה העוררת הוכרזה כהתאחדות בלתי מותרת כבר בשנת 2008, כשנתיים לפני שהעוררת החלה לעבוד בה, ודי בכך כדי לבסס את העבירה. יתר על כן, נטען כי העוררת על פי דבריה שלה, לא מילאה תפקיד מינורי, אלא תפקיד משמעותי, ומכאן כי יש לדחות את הערר.

### דיון והכרעה

ראשית, יש לדחות את הטענה כי העוררת פעלה במסגרת ארגון לגיטימי. בית משפט קמא הסתמך על הכרזה שנחתמה ביום 26.5.2008 על ידי שר הביטחון, ובה מנוי גם הארגון במסגרתו פעלה העוררת. דא עקא, כי הכרזה זו אינה חלה באזור, אלא בשטחי מדינת ישראל, והסתמכות על הכרזה זו הינה לפיכך, שגויה. יחד עם זאת, אין בכך כדי לסייע לעוררת, שכן אגודת הצדקה של קטר, או ג'מעית קטר אלחי'יריה, הוכרזה גם באזור כהתאחדות בלתי מותרת, וזאת על ידי אלוף פיקוד מרכז, ביום 29.6.2008 (ראו קמצ"מ 225 עמ' 5283). בהכרזה נקבע במפורש "כולל סניפים בשטחי הרש"פ". לפיכך, גם אם האגודה קיבלה אישור מטעם הרש"פ, אין בכך כדי לשלול את היותה התאחדות בלתי מותרת.

כאמור, העוררת הודתה כי פעלה במסגרת ארגון זה, וטענתה כי לא ידעה שהמדובר בהתאחדות בלתי מותרת, הינה בגדר טענה של אי ידיעת הדין, שאינה יכולה להתקבל.

שנית, יש להתייחס למעמדה של העוררת בארגון. אכן, אין חולק כי העוררת לא הייתה מנהלת הארגון. יחד עם זאת, ברור מדבריה שלה בחקירתה המשטרתית כי תפקידה בארגון לא היה שולי. העוררת נשאה בתפקיד ניהולי, שכלל סמכויות שונות, לרבות התקשרות מול קבלנים פרטיים, העסקת עובדים וארגון פעילויות ופרויקטים של הארגון. המדובר במשרה ניהולית ברורה, המציבה את העוררת בצמרת המערכת הניהולית של הארגון, גם אם לא בראשה. מכאן כי גם את הטענה בדבר היותה "פקידה בלבד" יש לדחות.

בעובדות האמורות יש כדי ללמד הן על מסוכנות והן על חשש להימלטות מאימת הדין. פעילות ניהולית במסגרת התאחדות בלתי מותרת, מלמדת על מסוכנות אינהרנטית. מערך הטרור העולמי אינו פועל רק במישור הצבאי, אלא גם במישור האזרחי, לשם "הכשרת הלבבות" והשגת מימון לשם הפעילות הצבאית (השוו ע"י 1704/14 **התביעה הצבאית נ' בלאונה** (פורסם בנבו, 11.12.2014), והפסיקה הנזכרת שם). בית המשפט העליון עמד על כך לאחרונה בע"פ 1784/14 **עאשור נ' מדינת ישראל** (פורסם בנבו, 3.9.2015):

> "ארגוני הטרור אינם צומחים יש מאין, ואינם ניזונים מן האוויר. ארגוני הטרור, וחמאס ביניהם, ככל מסגרת ארגונית המאגדת בני אדם ורותמת אותם לקידום מטרה משותפת – זקוקים לתקציבים משמעותיים ולבסיס תמיכה חברתי לצורך פעילותם השוטפת. על כן, עליהם להישען, מחד גיסא, על זרוע "צבאית" שתפקידה להוציא לפועל את פעולות הטרור, ומאידך גיסא, על זרוע "אזרחית" שתפקידה לספק לארגון את חומר הדלק המניע את פעילותו הצבאית – כסף ופעילים.

....

> *"עם זאת, לא אחת הפעילות "האזרחית" של ארגוני הטרור מיועדת
> ל"הכשרת הלבבות", היינו לפעילות של חינוך ורווחה שנועדה לגייס
> אהדה לארגון הטרור ולפעיליו כטובים ומיטיבים, וזאת על מנת
> ליצור תשתית לפעילותו העתידית של הארגון".*

לפיכך, מימון הטרור, הנעשה בדרכים שונות, פעמים רבות במסווה של פעילות הנחזית כלגיטימית, כפעילות צדקה באופייה, הינו סיכון משמעותי בהיותו חלק מהמנגנון המניע את הפעילות הטרוריסטית. העוררת נטלה חלק במנגנון זה, שכלל העברת סכומי עתק, ושנועד, כאמור, לשמש כחלק מהזרוע "האזרחית" של ארגון טרור.

לנוכח מסוכנות זו, ספק אם ראוי לשקול חלופת מעצר. יתר על כן, אופי פעילות העוררת, ומעמדה בארגון, יביאו לכך, אם תורשע, לעונש משמעותי, ובכך יש כדי לשמש תמריץ להימלטות מאימת הדין. העוררת מתגוררת בשטחי הרשות הפלסטינית בשטח A, ומכאן כי היכולת לעוצרה שוב אם תימלט מאימת הדין, הינה מוגבלת ביותר. השילוב של המסוכנות מפעילות העוררת כמו גם החשש להימלטות מאימת הדין, מביאים למסקנה כי בית משפט קמא לא טעה בהחלטתו עת הורה על מעצרה עד תום ההליכים.

אשר על כן הערר נדחה.

ניתנה היום, 13 באוקטובר 2015, ל' בתשרי התשע"ו, בלשכה. מזכירות ביהמ"ש תעביר העתק החלטה זו לידי הצדדים.

_____
המשנה לנשיא

3