1

```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2
    ------------------------------x
3                                      20-CV-2578(BMC)
    STUART FORCE, et al.,
4                                      United States Courthouse
            Plaintiffs,                Brooklyn, New York
5
            - versus -                 January 28, 2022
6                                      11:30 a.m.
    QATAR CHARITY, et al.,
7
            Defendants.
8
    ------------------------------x
9
        TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
10            ALL PRESENT VIA VIDEOCONFERENCE
            BEFORE THE HONORABLE BRIAN M. COGAN
11          UNITED STATES SENIOR DISTRICT JUDGE

12
    APPEARANCES
13
    Attorney for Plaintiffs: FLEISCHMAN BONNER & ROCCO LLP
14                           81 Main Street
                             Suite 515
15                           White Plains, New York 10601
                             BY:  PATRICK LOUIS ROCCO, ESQ.
16
                                 - and -
17
                             FLEISCHMAN BONNER & ROCCO LLP
18                           447 Springfield Avenue
                             Second Floor
19                           Summit, New Jersey 07901
                             BY:  JAMES P. BONNER, ESQ.
20

21  Attorney for Defendant:  DLA PIPER LLP (US)
    Qatar Charity            1251 Avenue of the Americas
22                           New York, New York 10020
                             BY:  JOHN M. HILLEBRECHT, ESQ.
23                               KEVIN WALSH, ESQ.

24

25
```

```
1    APPEARANCES (CONTINUED)

2    Attorney for Defendant:    ROPES & GRAY LLP
     Qatar National Bank       2099 Pennsylvania Avenue NW
3                              Washington, DC 20006
                               BY:  DOUGLAS HALLWARD-DRIEMEIER, ESQ.
4
                                   - and -
5
                               ROPES & GRAY LLP
6                              1211 Avenue of the Americas
                               New York, New York 10036-8704
7                              BY:  MICHAEL G. McGOVERN, ESQ.

8    Attorney for Defendant:    PILLSBURY WINTHROP SHAW PITTMAN LLP
     Masraf Al Rayan           31 West 52nd Street
9                              New York, New York 10019
                               BY:  CAROLINA A. FORNOS, ESQ.
10
                                   - and -
11
                               PILLSBURY WINTHROP SHAW PITTMAN LLP
12                             600 Brickell Avenue
                               Suite 3100
13                             Miami, Florida 33131
                               BY:  ARYEH KAPLAN, ESQ.
14                                  MARKENZY LAPOINTE, ESQ.

15
     Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
16                             Phone:  718-613-2330
                               Fax:    718-804-2712
17                             Email:  LindaDan226@gmail.com

18

19

20

21

22

23

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
```

PROCEEDINGS                                    3

1              (In open court; all present via videoconference.)

2              THE COURT:  Okay, Melonie.

3              THE COURTROOM DEPUTY:  Force, et al. versus Qatar

4    Charity, et al.  Docket Number 20-CV-2578.

5              Counsel, please state your appearances, starting

6    with the plaintiffs.

7              MR. ROCCO:  Good morning, Your Honor.  It's Pat

8    Rocco with Fleischman Bonner & Rocco for the plaintiffs.  With

9    me also is my partner, James Bonner.

10             THE COURT:  How are you, Mr. Bonner?

11             MR. BONNER:  Good morning, Your Honor.

12             THE COURT:  Good morning.

13             Okay.  Defendants?

14             MR. HILLEBRECHT:  Good morning, Your Honor.  For

15   defendant, Qatar Charity, it is John Hillebrecht from DLA

16   Piper LLP.  And with me is my partner, Kevin Walsh.

17             THE COURT:  Good morning.

18             Next defendant?

19             MS. FORNOS:  Good morning, Your Honor.  Carolina

20   Fornos with Pillsbury Winthrop on behalf of Masraf Al Rayan.

21   And with me are my colleagues, Aryeh Kaplan and Mark Lapointe.

22             THE COURT:  Good morning.

23             And who's last for the bank?

24             MR. HALLWARD-DRIEMEIER:  Good morning, Your Honor.

25   Doug Hallward-Driemeier from Ropes & Gray on behalf of Qatar

PROCEEDINGS                              4

1    National Bank.  And with me is my partner, Michael McGovern.

2              THE COURT:  Okay.  All right, thank you all for your

3    letters.

4              This is a premotion conference on the defendants'

5    proposed motion to dismiss.

6              Just to tell you how I run these things.

7              I'm sorry, was there someone else's appearance I

8    didn't get?

9              (No response heard.)

10             THE COURT:  No?  Okay.

11             Just to tell you how I run this kind of conference.

12             I'm going to give you some preliminary thoughts

13   about how the motion is likely to come out.  But I don't want

14   anybody to think I've made up my mind at this stage.  I

15   haven't.  I haven't seen the formal motion papers.  So I'm

16   just giving you a very preliminary reaction, and you shouldn't

17   think, oh, the judge has already decided this issue.

18             However, if I say something that sounds right to

19   you, you might take that into account in either making or

20   opposing the motion.

21             Now having said that, let me first turn to what I

22   think ought be the easiest issue, and that is the adequacy of

23   service of process.

24             Who's the most aggressive defendant that really

25   wants to press that issue?

PROCEEDINGS                                 5

1              (No response heard.)

2              THE COURT:  Who's any defendant that really wants to

3    press that issue?

4              MS. FORNOS:  Your Honor, I'm happy to address that

5    issue.

6              The service here -- I would note the following.  The

7    plaintiffs have taken the position from the outset of this

8    litigation that letters rogatory is the proper forum to

9    proceed with service.

10             In the interim, it shifted gears and had filed --

11   and attempted service via Federal Express by sending Federal

12   Expresses to various mailrooms without attesting to whoever is

13   receiving this FedEx, and whether that person has the

14   requisite agency to bind a corporation.

15             Under well-established principles, both in the

16   United States and in (audio interference) I do note that the

17   plaintiffs have cited article, I believe it was Article 11 of

18   the Civil and Commercial Procedures Law in Qatar.

19             That's not the proper article.  The proper article

20   is 10, which deals with how one serves a corporation, and

21   takes into consideration that it should be delivered to the

22   chairman or the manager or the joint partners.

23             The concept here is simply that we need to provide

24   proper notice.  So, Your Honor, we will certainly respect

25   your -- the Court's view on this, but we do believe that the

PROCEEDINGS                              6

1    proper procedures should be followed.

2              THE COURT:  Okay.  First let me ask you, Ms. Fornos:

3    How do I know you?  Are you a former AUSA?

4              MS. FORNOS:  Yes, Your Honor, I am a former AUSA in

5    the Southern District of New York.

6              THE COURT:  Okay.  Well, I know you from somewhere.

7              MS. FORNOS:  Yes, from the Federal Law Counsel, Your

8    Honor.

9              THE COURT:  Ah, right.

10             Everything you said is right, okay?  But where does

11   it get you?  Ultimately you're going to get served, and

12   there's going to be enough to litigate in this case without

13   unnecessary issues.

14             It seems to me that even if the plaintiffs had some

15   difficulty serving you, or any of the defendants, then I'd

16   issue an order for alternative service.  I could send them an

17   email, and that's good enough that we know they'll get it.

18             So do we really need to press this point?

19             MS. FORNOS:  Your Honor, we appreciate the Court's

20   position.

21             You are correct.  At the same time, we would

22   respectfully like to preserve our right to challenge proper

23   service, because there is an important concept here, which is:

24   Enforcement, should this case ever proceed, judgments cannot

25   be enforced unless proper protocols are followed.  And proper

PROCEEDINGS                                         7

1    protocols here, pursuant to the plaintiffs' own understanding

2    and admission, is letters rogatory.

3              MR. ROCCO:  Your Honor, if I may just briefly --

4              THE COURT:  No, I'll hear from you, Mr. Rocco.

5              MR. ROCCO:  Okay.

6              THE COURT:  Go ahead and finish, Ms. Fornos.

7              MS. FORNOS:  Thank you, Your Honor.

8              I simply was trying to emphasis the most important

9    issue for us is preserving our right to challenge.

10             And the Court is -- it may very well happen, the

11   letters rogatory will happen, or another ruling will affect

12   that.  But we do want to preserve our rights.

13             THE COURT:  I don't want you to.  I mean, I

14   understand what you're saying, but at the end of the day,

15   you're going to get served one way or another.  So your rights

16   are illusory.  It's like -- it's going to get done.  Why make

17   them litigate it?

18             Yes, you're right.  If it's improper service and

19   they get a judgment, then the judgment won't be enforceable

20   against you, that's fine.  But they're going to get proper

21   service one way or the other.  Don't we have enough to talk

22   about?

23             All right, here's what I'm going to do.  Go to your

24   client, Ms. Fornos, and tell them, The judge would really

25   appreciate it if on this ministerial point they not insist on

PROCEEDINGS                                    8

1    all of the rights that they might have and give it some

2    reconsideration.

3              You know, there's a lot of judicial discretion in

4    this case.  I'd like to keep it even.  But I expect all the

5    parties to fight the fights that need to be fought, and not

6    the ones they don't.  So just consider it.

7              Okay, obviously I'm not going to preclude you from

8    making this motion.  You have the absolute right to make it,

9    it's just what we call a "dilatory motion".

10             I don't know if the other two defendants are also,

11   you know, interested in make this challenge, but if you are, I

12   ask you also to take it back of your clients and tell them the

13   judge would appreciate it if you not press this point.

14             Okay, so please do that.

15             Mr. Rocco, do you need to add anything, given what

16   I've said?

17             MR. ROCCO:  No, I don't, Your Honor.  I will

18   disagree with the characterizations, but that's for another

19   day.

20             THE COURT:  That's fine.

21             Either of the other defendants need to add anything

22   to that?

23             MR. HILLEBRECHT:  Not for Qatar Charity, Your Honor,

24   no.  We understand.

25             THE COURT:  All right.  Next, and I think this

PROCEEDINGS                                    9

1   should be a pretty straightforward issue that I'll ask

2   Mr. Rocco about.

3            What about these 16 plaintiffs?  How do they get

4   into this case?

5            MR. ROCCO:  Your Honor, I think there's two issues

6   there.  As to some of the 16, I think the claim, as I

7   understand it correctly from the summary arguments of

8   defendants, is that they were foreign nationals and then

9   somehow not entitled to recover.

10            But the foreign nationals that are plaintiffs here,

11   are the heirs or family members of actual U.S. nationals who

12   were killed in the attacks at issue.  So I think, as Your

13   Honor ruled in a similar case, they do have standing.  I think

14   that disposes of that issue.

15            I know it's a disagreement with defendants as to

16   what law will ultimately control them, but certainly there's

17   precedent to say that the non-U.S. citizen heirs, or

18   successors of U.S. citizens who are killed in terrorists

19   attacks have standing.

20            So that's one issue.  I think that's the majority of

21   the 16 that we're talking about.

22            The other issue is they claim that the relationship

23   of some, a handful of the Qatar (audio interference)

24   plaintiffs is too remote to qualify.

25            And although they concede that there are special

PROCEEDINGS                                            10

1   circumstances that would allow family members who are

2   otherwise more remote than direct kin to recover under the

3   ATA, we think that's a fact issue, Your Honor, and we've

4   alleged there are relationships here, and that's the way we

5   can satisfy whatever the additional requirements are to show a

6   special relationship of those family members.

7            We should be entitled to do that as an issue of fact

8   rather than an issue of pleading.

9            THE COURT:  Okay.  But as I understand it, what the

10  defendants are saying, is that these 16 plaintiffs are either

11  not U.S. citizens, not surviving U.S. citizens, or not family

12  members of those injured or killed.

13           Maybe one of the defendants that champions this

14  point can tell me:  Is it am I misphrasing it, because it's

15  not that they're not family members, but it's that they're too

16  remote?

17           Is that the contention the defendants are making?

18           MS. FORNOS:  Yes, Your Honor.  Carolina Fornos

19  again.

20           That is the allegation, Your Honor.

21           THE COURT:  Okay.

22           MS. FORNOS:  We're talking about great

23  grandchildren.  We're talking about -- there's such a

24  distance.  And we do believe that there are some deficiencies

25  there, which we're prepared to highlight in a brief.

PROCEEDINGS                                    11

1          THE COURT:  But the statute says:  Survivors or

2    heirs, right?  So do you think the statute doesn't mean what

3    it says?

4          MS. FORNOS:  Your Honor, we understand the Court's

5    position on this, and we understand that this very issue is up

6    on appeal at the moment in *Henkin*.

7          The way we're reading the statute is that heirs or

8    survivors modifies the U.S. national.

9          The statute was pretty clear that it was the U.S.

10   nationals that can -- that have the injury to their person or

11   property, and the heirs and survivors can assert the rights of

12   that U.S. national.

13         We do believe that that is an issue that, at a

14   minimum, Your Honor, the Second Circuit hasn't expressly

15   addressed, and we do want to preserve our right on that front.

16         THE COURT:  Okay.  That's okay.  And I don't think

17   anyone should be chagrined if I decided any of these issues in

18   advance that the sun comes up for me every morning for the

19   first time.  And just because I decided something one way,

20   doesn't mean that I'm bound to decide it the same way the next

21   time it comes up.

22         So that sounds like a real issue, and I'll take a

23   briefing on that.  Okay.

24         Next, and this is a bigger issue, obviously, with

25   regard to personal jurisdiction.

PROCEEDINGS                          12

1          As I understand the flow of money, as alleged in the

2    complaint, we're talking about QC putting money in the banks,

3    the banks running it through New York in their correspondent

4    accounts, and then the banks further giving it, putting it in

5    accounts in the West Bank or Gaza, to which it goes to

6    terrorist organizations.

7          First of all, is there any dispute?

8          And let me ask, Mr. Rocco:  Have I said it right as

9    to how you see the flow of money?

10         MR. ROCCO:  You have said it right, Your Honor.

11         THE COURT:  Okay.  And then I want to know from any

12   of the defendants that want to talk to me:  Why doesn't the

13   use of the New York correspondent accounts, as part of that

14   stream of money, suffice for personal jurisdiction purposes?

15         (No response heard.)

16         THE COURT:  We all agree it does.

17         MR. HALLWARD-DRIEMEIER:  Your Honor, this is Doug

18   Hallward-Driemeier.  I'm going to let Ms. Fornos address that.

19   Because the allegations in the complaint about the

20   transactions have to do with her client, Mr. Al Rayan.

21         The allegations with respect to the second bank,

22   Qatar National Bank, are not that QNC made any transactions

23   through New York.  Those allegations of the correspondent

24   banking relationship are solely made with respect to MAR.

25         So after Ms. Fornos speaks, I'll speak to this

PROCEEDINGS                                    13

1  specific issue with respect to QNB.

2              THE COURT:  Okay.

3              MR. HILLEBRECHT:  Your Honor, just before Ms. Fornos

4  begins, this is Mr. Hillebrecht for Qatar Charity.

5              The Charity has a unique defense in this context, so

6  I do think it makes sense for the banks to go first.  But I

7  just want to flag that for you, I'd like to add something

8  after that.

9              THE COURT:  Okay.  Well, Mr. Hallward-Driemeier is

10 deferring to Ms. Fornos.

11             Ms. Fornos, will you defer to Mr. Hillebrecht?

12             MR. HILLEBRECHT:  Your Honor, I was suggesting that

13 I would go after the banks.  I think that makes more sense.

14             THE COURT:  Okay.  So you start, Ms. Fornos.

15             MS. FORNOS:  Yes, Your Honor.

16             I believe the issue here is that the corresponding

17 allegation, the link to New York, is with respect to our

18 client, Masraf Al Rayan, only our client.

19             And we're well aware of *Licci*.  We're aware of the

20 guidance of the Second Circuit.

21             But there is a distinction between maintaining

22 accounts, and I will explain that in this particular case,

23 what the plaintiffs have alleged are general allegations of

24 use of correspondent banking.

25             We know that the only specific allegations contained

1    in paragraph 130 that has a specific time frame and a specific

2    amount, although they collectively lump defendants together,

3    and they don't even say that that went through correspondent

4    banking.  So our position is that they haven't met the

5    purposeful availment.

6           But even if they do, Your Honor, there is still the

7    requirement under the Long-Arm Statute that there needs to be

8    a nexus, a nexus between the actual corresponding activity

9    that ties them to New York.  And I would underscore that our

10   client does not have branches in New York, does not operate in

11   New York, and the final wrongful illegal act.  The illegal act

12   of these individuals.

13          And we would agree that the Court frame the flow of

14   money correctly, but there's nuances in that flow.  They're so

15   generalized allegations of:  We have one client, one customer,

16   that allegedly uses this correspondent bank, not -- there's no

17   other allegations as in *Kaplan* where we have exemptions being

18   given, CTRs being waived.

19          No, just generalized use of correspondent banking,

20   which goes back to Qatar Charity local branches, which then

21   allegedly, some unspecified sums, unspecified amounts, goes to

22   unidentified affiliates of Hamas and PIJ, and thereafter

23   somehow makes their way to the individual attackers who caused

24   these injuries.

25          The attenuation here is insufficient for

PROCEEDINGS                          15

1    jurisdiction.  And, Your Honor, this is actually dovetails

2    into the ATA and JASTA, because there isn't enough for general

3    awareness.

4            And these issues are all intertwined, the

5    jurisdiction and the ATA and JASTA are all part of the same

6    deficiency that permeates this complaint.

7            THE COURT:  Well, that raises a possibility in my

8    mind, and I think the defendants have to think about this,

9    because it's a personal jurisdiction issue, there's really no

10   need at all for Mr. Rocco to have alleged anything about it in

11   the complaint.  You don't have to allege a personal

12   jurisdiction in a complaint.  Rule 8(a) doesn't say anything

13   about a personal jurisdiction.

14           The fact that he has, means that I can consider

15   those allegations in opposition to a motion to dismiss on that

16   ground.  But it also seems to me that it might require

17   discovery, as it often does in a personal jurisdiction

18   context, and the defendants might have to give up a lot of

19   discovery, as a preliminary issue, at an early date, before I

20   would be comfortable dismissing it on a lack of personal

21   jurisdiction grounds.

22           I'm not saying that that should dissuade you from

23   making your motions, I just think you need to be aware of it.

24           And I also -- I agree, Ms. Fornos, that the personal

25   jurisdiction issue in this respect is kind of intertwined with

PROCEEDINGS                                    16

1     the substantive issues.  And when that happens, the authority

2     generally suggests that we do the discovery as part of merits

3     discovery, and then I would hold decision on the personal

4     jurisdiction issue until a later date, which might even be

5     trial.

6              So I'm not sure if it's, again, worth the defendants

7     making the motion, even though I think you might absolutely be

8     right, just be aware that I'm likely to order some discovery

9     on it if I find any dispute about the facts, and we may have a

10    hearing on it, and that hearing may be the day before trial or

11    during trial.  Okay?  So just keep that in mind.

12             MS. FORNOS:  Understood, Your Honor.

13             I think we would just ask the Court to consider it,

14    and we will brief this, that it's a gatekeeping issue, and the

15    initial jurisdiction can also be stayed.  And on a 12(b)(6),

16    the Court can look at the allegations and determine that there

17    isn't even the bear minimum threshold to warrant an ATA claim

18    or a JASTA claim and, therefore, there is no reason to get to

19    the issue of jurisdiction.

20             THE COURT:  I disagree with you on that.

21             Well, you're saying that I can view the jurisdiction

22    issue as part of the 12(b)(6).  I don't agree with that.

23             I think the jurisdiction issue, whether it's subject

24    matter or personal jurisdiction, as here, is a separate thing,

25    and it allows me to go beyond the complaint, because as I

1   said, Rule 8 doesn't allow -- doesn't require any kind of

2   allegations about personal jurisdiction, although lawyers

3   commonly do it.

4          If what you're saying is, I'll never get to that

5   personal jurisdiction issue because I will have dismissed the

6   complaint under 12(b)(6) prior to that, yes, that's fine.

7   Okay, that would work, if it comes out that way.

8          All right.  Any of the other counsel want to comment

9   on that aspect of it?

10          MR. HALLWARD-DRIEMEIER:  Thank you, Your Honor.

11   Doug Hallward-Driemeier for QNB again.

12          With respect to Qatar National Bank, the issue is a

13   bit different.  Because as Ms. Fornos indicates, all of the

14   allegations with respect to correspondent banking

15   relationships and transfers through those New York

16   correspondent banks had to do with MAR.

17          The allegations with respect to QNB are simply that

18   they were maintaining accounts for QC and certain individuals

19   in Qatar.

20          The way that the plaintiffs indicate in their

21   premotion letter that they expect to obtain personal

22   jurisdiction over QNB is under a theory of conspiracy

23   jurisdiction.  And they cite two cases.  They cite *Allianz* and

24   *Schwab* for that.

25          But *Allianz* and *Schwab* did not concern the threshold

PROCEEDINGS                                    18

1   question of statutory jurisdiction over the person.  They

2   think -- and those two cases, both of them, identify that

3   statutory jurisdiction was conceded, and the Court merely

4   proceeded to the threshold, to the second question of

5   constitution of the outer bounds of due process under the

6   constitution.

7           But here, we have a statutory jurisdiction problem.

8   Because New York's Long-Arm Statute does not employee the

9   doctrine of conspiracy jurisdiction.

10          Your Honor recognized that in the *Dental Supplies*

11  case, and two cases, at least, I think there are multiple,

12  since *Schwab* and *Allianz* have reiterated that with respect to

13  New York's Long-Arm Statute.

14          And that's because New York's Long-Arm Statute,

15  302(a), uses the phrase "person or agent".  And the courts

16  have construed that reference to agent to adopt principles of

17  principle agent law, and that the principle must direct, and

18  to some degree control, the agent for the actions within the

19  jurisdiction here in New York to be ascribed to the principle.

20          So here with respect to QNB, it's not an inadequacy

21  of factual allegations, there are no factual -- rather, I

22  should say there are no factual disputes.  It's rather that

23  the theory of personal jurisdiction is legally deficient.

24          And because we don't meet the statutory

25  jurisdictional question, you don't ever get to the issue

1    addressed in *Schwab* and *Allianz*.

2             THE COURT:  But might we not still get into

3    discovery, because the plaintiff doesn't know the full scope

4    of the relationships here?  And even under the narrow

5    statutory defense that you're trying to raise to personal

6    jurisdiction, the plaintiff is entitled to that information

7    before you say, Oh, well, you know, we're just not an agent

8    under the Long-Arm Statute?

9             MR. HALLWARD-DRIEMEIER:  Well, though, Your Honor,

10   as I understand the cases, they would allow personal

11   jurisdiction where there are questions of jurisdictional

12   factual disputes related to personal jurisdiction, but here

13   that's not the dispute.

14             The dispute is whether as a matter of law there is

15   such a document in New York's Long-Arm Statute as conspiracy

16   jurisdiction.  Because the allegations about QNB are all about

17   maintaining, merely maintaining, accounts for four customers

18   in Qatar.

19             THE COURT:  Okay.  I understand what you're saying

20   and that makes sense.

21             I just want to caution you that it seems to me that

22   the plaintiffs are, again, not confined by what's alleged in

23   the complaint with regard to personal jurisdiction.

24             They may come up with a whole new theory that they

25   haven't pled in opposition to a motion to dismiss on personal

1    jurisdiction.  And because of that, they can say, If what we

2    think is true, then New York Long-Arm would cover this

3    transaction but, Judge, we need some discovery to see if it's

4    true.  So just be aware of that, okay?

5            And I think one thing that we should all agree on,

6    based on what I've heard so far is, at least as to some of the

7    defendants, I'm not going to see any due process

8    constitutional discussion, right?

9            I mean, because we're talking about, at least on

10   this argument, a statutory deficiency.  And the New York Court

11   of Appeals has said, although whether it's exaggerated or not

12   is another thing, that the New York Long-Arm Statute does not

13   reach to the full limit of constitutional jurisdiction.

14           So does anyone think they need to raise the recent

15   Supreme Court cases on due process, or are we limiting

16   ourselves to 302(a)(1), I think it is?

17           MR. HALLWARD-DRIEMEIER:  We think, Your Honor, that

18   we're not yet to the second question of due process, we're

19   only at the question of statutory jurisdiction.

20           THE COURT:  Well, if you raise it just on statutory

21   and I rule against you, you will have waived the due process

22   challenge as to personal jurisdiction, right?

23           MR. HALLWARD-DRIEMEIER:  Well, Your Honor, I think

24   that we would have defenses to both, because even if we got to

25   the question of *Schwab* and *Allianz*, there would need to be an

PROCEEDINGS                                21

1    adequate allegation of conspiracy.  And with respect to QNB,

2    there is no allegation of conspiracy.

3             With respect to QNB and MAR, the sum total of

4    allegations seem to be that we each have, as a customer, Qatar

5    Charity.  And that's not enough to establish a conspiracy on

6    which MAR's contacts with the jurisdiction could be

7    attributed, even under the constitutional principles

8    articulated in *Schwab*.

9             THE COURT:  Again, I'm just going to ask you to keep

10   in mind that the plaintiff is not bound by what's pled in the

11   complaint when it comes to personal jurisdiction.  They can

12   come up with a whole new theory.

13            So if your motions, and I'm saying this to all the

14   defendants, basically say look at allegations in this

15   complaint, Judge, those are not enough for personal

16   jurisdiction.  And Mr. Rocco comes back and says, You know,

17   maybe not, maybe yes, but here's what we really think

18   happened, and this would be enough for personal jurisdiction,

19   but we need discovery on it, I'm not sure that motion will get

20   you anything.

21            MR. HALLWARD-DRIEMEIER:  I appreciate that, Your

22   Honor.  Obviously, I can't blame the deficiencies of an

23   alternative theory until I've seen it.  But we will address it

24   at that time.

25            THE COURT:  That's the nature of personal

PROCEEDINGS                              22

1    jurisdiction.  And I think there's a lot of confusion

2    sometimes when attorneys say, Oh, the complaint alleges this,

3    and that's not good enough.  You know, you have to say, There

4    is no personal jurisdiction, it's a fact as to what happened.

5            And that's going to be your burden -- it's the

6    plaintiffs' burden to prove there is personal jurisdiction.

7    But you have to go forward at least and show there's a basis

8    to find that there's not.

9            Okay, I think we're on the same page.

10           Mr. Hillebrecht, do you need to add something?

11           MR. HILLEBRECHT:  Just very briefly, Your Honor,

12   taking the points that have been made.

13           I just wanted to remind the Court, as we set forth

14   in our premotion letter, we are very differently situated.

15           Unlike the defendants in *Licci* and all the other

16   cases that I'm sure the plaintiffs will rely on with our

17   codefendants, we're not a bank.

18           And we cited Your Honor to the *Berdeaux* case,

19   Judge Caproni's decision -- for the reporter it's

20   B-E-R-D-E-A-U-X -- which very forcibly came out for the view

21   that the theory followed in that case, or pushed by the

22   plaintiff in that case, was not sensible.

23           Because it makes no sense for a customer in a

24   position like Qatar Charity, where, again, the allegation is,

25   we have money in Qatar that we want to get to our own bank

PROCEEDINGS                                    23

1    accounts in the Palestinian territories.  We have no desire to

2    send it through New York, it makes no sense for us to send it

3    through New York, and we're totally indifferent (audio

4    interference.)

5           THE COURT:  But do you know, though, that it's been

6    sent through New York?

7           MR. HILLEBRECHT:  So *Berdeaux* holds, broadly and

8    specifically, that knowledge is not enough.  That it has to be

9    purposeful availment.  It has to be directed by the customer.

10          Here it's -- and I understand what Your Honor just

11   said about what needs and does not need to be in the

12   complaint, but I do think it's significant.  There's no

13   allegation in the complaint that the customer, Qatar Charity,

14   directed that they use the New York banks.

15          And as *Licci*, too, and other cases that I know Your

16   Honor's familiar with and made clear, it's not necessary to do

17   so.  For this kind of transfer, from one foreign jurisdiction

18   to another, it is not necessary to go through New York.

19          And one of the points we're going to make in the

20   motion, Your Honor, is, you know, accepting at face value for

21   the moment the core allegations here; i.e., that Qatar Charity

22   was sending funds to U.S.-designated terrorist organizations,

23   why would we purposefully send money into the United States

24   when there's no need to do so?

25          So I just wanted to flag for Your Honor that that's

PROCEEDINGS                                                24

1   the argument that we have, none of the other defendants do,

2   and we would be pursuing.

3          THE COURT:  Okay.

4          Mr. Rocco, one of the things that does concern me

5   is, you know, to get by on personal jurisdiction, whether it's

6   in your complaint or extraneous to your complaint, you're

7   going to have to raise a prima facie case, I believe, under

8   the case law that there is personal jurisdiction.  And I'll

9   either assume that the evidence you produced, or the arguments

10  that you make are accurate, or I'll order discovery to see if

11  they are, one way or the other.

12         But in doing that, you know, looking at this

13  complaint, it does seem to me that there's a lot of lumping

14  together of defendants who might have behaved very

15  differently.

16         And I think on personal jurisdiction, you can't just

17  put a label of conspiracy on them and say that's our argument,

18  you're going to have to show me some basis by which a

19  conspiracy was reached.

20         Now maybe that means I should put off personal

21  jurisdiction until all the discovery has been done, but you're

22  going to have to think about how you want to approach it.

23  Because like I've been saying to the defendants, the

24  complaint -- if I assume what's in the complaint is true, I'm

25  not sure that's enough for personal jurisdiction.

PROCEEDINGS                                    25

1          MR. ROCCO:  Well, on the issue of the complaint,

2    Your Honor, I do want to clear up one thing, because I think

3    it's been misstated.  That respectfully with respect to my

4    cocounsel, the complaint unequivocally alleges that QNB's New

5    York correspondent accounts process U.S. dollars to go to

6    Hamas and PIJ.

7          We couldn't be clearer, paragraph 6 and 13 of the

8    complaint.  Paragraph 13 says, "Qatar National Bank and Masraf

9    Al Rayan bank purposefully and knowingly effectuated U.S.

10   dollar-denominated funds transfers on behalf of Qatar Charity

11   to banks in New York."

12         Now, of course, we've not had discovery, Your Honor,

13   so we were able to make that general allegation, but these

14   confidential bank records are not available to folks like us,

15   but (audio interference) Qatar Charity staffer in Israel, we

16   wouldn't have had the detail we have on Masraf Al Ryan.

17         But we think -- that's the kind of thing

18   (indiscernible) give us, Your Honor, the correspondent

19   accounts that the records exist that we've alleged not only

20   did they maintain accounts for Qatar Charity and QNB, but also

21   for these notorious Hamas fugitives.  And we've alleged that

22   those accounts were used to fund Hamas and PIJ terrorism.

23         Now I think the one thing that's not acknowledged

24   and been ignored specific allegations of the complaint, but

25   the general allegations here that distinguish this case from

PROCEEDINGS                          26

1    any of the cases they cite, and the cases that like QC, Qatar

2    Charity, can say that this regular customer has no idea what's

3    going on and the bank has been used by U.S. bank.

4              That's not this case, Your Honor.  This case is

5    unique in the sense that you have the government of Qatar, and

6    the royal family of Qatar, they are openly sponsoring Hamas

7    terrorism.  They're pledged publicly a billion dollars to

8    Hamas.

9              They've been sanctioned for doing that by various

10   countries.  The U.S. -- they've been called out in the U.S.

11   and Congress and by Treasury for being a permissive state for

12   financing terrorism.  They've been criticized for supporting

13   Hamas.  And then (audio interference) is in a dominant

14   position on each one of these defendants' boards and controls

15   these defendants.

16             So the notion that they didn't know what was going

17   on here, or that we haven't satisfied that level of scienter,

18   we've got more than we normally would have in a case like this

19   to get out of the gate on a claim.

20             And the notion that Qatar Charity had no idea that

21   they were going to access the U.S. banking system, we're

22   talking millions of dollars.  They had to access it.  They

23   needed dollars, as alleged in the complaint.

24             Hamas and PIJ wants dollars.  They don't want

25   sheckles.  They don't want euros.  They don't want, you know,

PROCEEDINGS                                      27

1    lyra, or anything else we can think of, they had to have

2    dollars.

3              And to have that quantity of dollars, they knew that

4    they were going to access the U.S. banking system.  It wasn't

5    because they casually decided it, they had to.  And they did

6    it in a way to try to remove the direct role of Qatar and the

7    government by using these entities they controlled, the two

8    banks and Qatar Charity.

9              And Qatar Charity is not some innocent customer

10   here, Your Honor.  As alleged in the complaint, they've been

11   sanctioned by just about every democracy in the world for

12   being a sponsor of terrorism.

13             They were sanctioned by the U.S. as a Category III

14   financier of terrorism.  They were sanctioned by Israel and

15   banned from --

16             THE COURT:  You're still going to have to tie it up

17   to this case, right?

18             MR. ROCCO:  Understood.

19             It's not a coincidence, Your Honor, you have the

20   Qatar royal family in control of these entities.  That

21   bespeaks the conspiracy we're talking about.

22             You have an open and notorious sponsorship of Hamas

23   to start, and then you have them infiltrating these entities

24   and pursuing this scheme or their will to finance these

25   terrorist activities.

PROCEEDINGS                          28

1          I just respectfully say, Your Honor, that's the

2     setting here which distinguishes this case from just about any

3     other case that they are citing in these papers.  It's a

4     different set of circumstances.

5          I think it permeates not only the personal

6     jurisdiction issue, which Your Honor has aptly set out the

7     issues, but it permeates the merits as well.

8          We're hearing that they have this activity -- first

9     of all for jurisdiction, Masraf is saying, Well, this is not

10    connected enough to New York.  Well, it was essential, Judge.

11         The statement is the activity in New York has to be

12    not completely (audio interference) from the claims we have

13    here.  It was essential to the claims we have here that they

14    got U.S. dollars.  And that's been alleged in the complaint.

15    That's what Hamas requires.  That's what PIJ requires.

16         And so this is not a case where there's some casual

17    glance to New York and that's why here.  It's here because

18    they needed U.S. dollars, and that's where they could get

19    them.

20         THE COURT:  I got your point.  All right, I

21    understand the arguments on that.

22         The last thing I want to talk about, and only

23    briefly having touched upon it, because it is somewhat

24    intertwined, is the adequacy of the complaint to state a

25    claim.

PROCEEDINGS                    29

1          I just want to know, Mr. Rocco, are you really

2     pressing the primary liability theory, or is this strictly a

3     secondary liability case?

4          MR. ROCCO:  Your Honor, I think we've alleged both,

5     because we do have Your Honor's decision, as well as others,

6     that show, that demonstrate, that the financing activity here

7     that we needn't have a direct -- I think the defendants argue

8     that we have to show they were pointing the trigger and they

9     weren't the committing the violent acts.

10          But as Your Honor has held in the context of direct

11     claims, it's enough to have this kind of direct financing with

12     knowledge that we've alleged that itself is the dangerous to

13     human life activity that satisfies the statute.

14          So I think -- if you ask me (indiscernible)

15     certainly it's easier for us to demonstrate aiding and

16     abetting liability here, but that's not to say we don't have a

17     direct ATA claim.

18          THE COURT:  And an opposition to a 12(b)(6) motion,

19     you're going to continue to assert the direct liability

20     theory?

21          MR. ROCCO:  I think we have a basis to do so, Your

22     Honor, so we would.

23          THE COURT:  Okay.  I don't know that that's the way

24     you're going to prevail in this case.  I guess everything in a

25     case this big is important, but you might consider, you know,

PROCEEDINGS                    30

1    narrowing your grounds and just going forward with what

2    believe you have.

3              I do want to emphasize to all the parties, there's

4    been a discussion of other cases that I've read and rendered

5    in this area, and I made it clear that I'm not wedded to those

6    decisions.  But at the same time, because of that, I don't

7    want any of the parties to feel they can't say, Judge, you

8    were wrong in this case.

9              You know, you can try to distinguish cases all you

10   want, but if you think I got it wrong, tell me, and I will

11   consider that as if seeing it for the first time.  Okay.

12             All right.  Let's talk about a schedule.

13             When can the defendants file their motion?  Is

14   Monday too soon?  I know that someone said "yes".

15             What's the earliest that you can file your motions?

16             MS. FORNOS:  Your Honor, if we could have -- and

17   I'll defer to everyone -- I would ask for at least two weeks?

18   Or one week?  I don't know where the defendants are.

19             THE COURT:  I think they're annoyed with you for

20   asking for two weeks, right?  Someone is.  Someone is going to

21   suggest you need at least a month, right?

22             MR. HALLWARD-DRIEMEIER:  No, Your Honor, I actually

23   think that two weeks would be an appropriate time.

24             THE COURT:  Okay.

25             MR. ROCCO:  We agree with Qatar Charity, Your Honor.

PROCEEDINGS                          31

1          THE COURT:  Great.  Very efficient.

2          Let's have the motions due two weeks from Monday.

3          And then I'm going to set, Mr. Rocco, two weeks for

4   opposition.

5          That's probably not going to be enough.  But once we

6   review the papers, get back to me with a reasonable request

7   for an extension.

8          And I'm going to say the same amount for reply.  I'm

9   not going to set a reply that generally you will need for ten

10  days after opposing papers, but here I think the defendants

11  are going to need to see plaintiffs' opposition before they

12  know how much time they need for reply.  So I'm just going to

13  leave the response and the reply dates loose for now.

14         And then the next question is, and the only

15  question, what do the parties want to do about discovery

16  pending the motions?

17         Let me start with Mr. Rocco and see if I can make it

18  easy.

19         Subject to any discovery that you need, Mr. Rocco,

20  to oppose the motions, and that might or might not include

21  overlapping merits discovery, are you willing to stay

22  discovery, pending determination of the motions?

23         MR. ROCCO:  Your Honor, we think it's appropriate to

24  move forward with at least jurisdictional discovery, if

25  they're going to pursue, you know, the jurisdictional motion,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    32

1    and it sounds like they are.

2          I mean if they're going to table that, then we can

3    just proceed with merits discovery once Your Honor's decided

4    the motions.

5          But we're prepared to file Monday with, or serve, at

6    least, the jurisdictional discovery requests on each

7    defendant, if that's allowed by Your Honor.  But obviously we

8    will leave it up to Your Honor's discretion as to how you want

9    to proceed.

10         THE COURT:  In any event, I'm going to ask you to

11   wait until you see their moving papers, because it will refine

12   and educate you on what you can get from them in connection

13   with this.  Don't serve it on Monday.

14         What about the defendants?  Are you willing to go

15   forward with some discovery, or is it your preference that you

16   not?

17         MS. FORNOS:  Your Honor, we believe that discovery

18   is premature at this time.  For all the reasons that have been

19   stated, and the things that haven't been stated with respect

20   to general awareness under JASTA, we don't believe that

21   plaintiffs can survive a 12(b)(6).

22         We would ask the Court to consider the 12(b)(6)

23   before we engage in discovery.

24         And also, Your Honor, I don't know if the Court

25   intends to discuss the issue of page limits, because we would

PROCEEDINGS                                    33

1    respectfully request --

2                THE COURT:  Page limits are waived.  Page limits are

3    waived.

4                I would appreciate some coordination between defense

5    counsel, to the extent you have common arguments, and I know

6    sometimes this is a client relations thing, but if you can do

7    one brief of your common arguments, and then separate

8    supplemental briefs arguments that are specific to your

9    client, that would be helpful.

10               I'm not going to order it.  If you can do it, I'd

11   appreciate it.  And I'm not going to limit any of those as to

12   the number of pages.

13               MS. FORNOS:  Thank you, Your Honor.

14               THE COURT:  This is not that sort of case.

15               MS. FORNOS:  Thank you.

16               THE COURT:  Okay.  I'm going to defer ruling on what

17   kind of discovery we have.  I'm going to stay it for now.  I

18   want to look at the defendants' motions.  And then I want

19   Mr. Rocco to have a chance to opine on what he needs now and

20   why he needs it.

21               And also, frankly, when I've read in detail the

22   defendant motions, I may be able to form a view as to how

23   likely it is that the case might go completely away so that we

24   don't need discovery.

25               So I'm not going to make any determinations until

PROCEEDINGS                                    34

1    I've seen the motions.  Okay?

2              Anything else anyone needs to address?

3              MR. ROCCO:  That's it.  We appreciate your time, as

4    always.

5              THE COURT:  I appreciate you calling in.  It's

6    educated me a lot, which is why I hold these conferences, and

7    I'll look forward to your papers.

8              We are adjourned.

9              (Chorus of:  Thank you, Your Honor.)

10

11             (Whereupon, the matter was concluded.)

12

13                    *    *    *    *    *

14

15

16   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
17

18   s/ Linda D. Danelczyk              January 31, 2022

19     LINDA D. DANELCZYK                 DATE

20

21

22

23

24

25