**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 908-516-2066 • FAX: 908-516-2049 • WEB: WWW.FBRLLP.COM

EMAIL: JBonner@fbrllp.com

March 27, 2023

**Via ECF**

Honorable Brian M. Cogan
United States District Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

**Re:   *Force, et al. v. Qatar Charity, et al.,* 20-cv-02578-BMC**

Dear Judge Cogan:

On behalf of the Plaintiffs in the above-captioned action, I submit this letter in connection with the Defendants' pending motions to dismiss, for purposes of:  (a) alerting the Court to the significance of the Second Circuit's recent decision in *Freeman v HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023), and (b) responding to Mr. Hillebrecht's March 17, 2023 letter [ECF 83] submitting, as supplemental authority in support of defendant Qatar Charity's pending motion to dismiss, a copy of Judge Garaufis's March 16, 2023 decision granting, without prejudice, defendants' motions to dismiss *Przewozman, et al., v. Qatar Charity, et al.*, 20-cv-6088-NGG-TAM for lack of personal jurisdiction.

***Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. Jan. 5, 2023)**

In their motion to dismiss briefs, Defendants repeatedly asserted that Plaintiffs could demonstrate a *prima facie* case of conspiracy-based personal jurisdiction and state claims for conspiracy liability under JASTA only by alleging that each Defendant directly conspired with the terrorist organization responsible for, or even with the individual terrorists who carried out, the attacks on Plaintiffs and their family members.  The Second Circuit's recent *Freeman* decision squarely rejected those arguments.  *See* 57 F.4th at 77 (defendants' purported "direct agreement" requirement is "unsupported by the text and structure of JASTA and runs counter to basic principles of conspiracy liability").  As the Second Circuit held, "under well-settled principles of conspiracy law, '[t]here is no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member.'"  *Id.* at 78 (quoting *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989)).

In *Freeman*, the Second Circuit nevertheless affirmed dismissal of the JASTA conspiracy claim because the complaint failed to allege plausibly that:  (a) the defendant banks conspired, even indirectly, with a terrorist organization; (b) the defendants and the terrorist groups that killed and injured plaintiffs were engaged in a common pursuit; or (c) the plaintiffs were injured by overt acts in furtherance of the alleged conspiracy.  *See* 57 F.4th at 79-82 (quoting and citing *Halberstam v. Welch*, 705 F.2d 472, 477, 478, 480, 481, 482, 484-85, 486, 487, 489 (D.C. Cir. 1983)).

Honorable Brian M. Cogan
March 27, 2023
Page 2

Here, in contrast, Plaintiffs allege a single-minded conspiracy intended to fund Hamas and Palestinian Islamic Jihad ("PIJ") terrorism that was directed by the Qatari government and Royal Family, which control all of the Defendants. The Complaint alleges that the Qatari government and Royal Family have long served as the principal supporters and funders of Hamas and PIJ. *See* Complaint [ECF 1] at ¶¶ 2-3, 119-127. They employed the control that they exercised over Defendants to cause them to provide banking services to notorious Hamas terrorists and sponsors, and to engage in illicit banking transactions designed to fund Hamas terrorism through Defendant Qatar Charity, an entity Israel banned from operating in the Palestinian Territories as a result of its membership in the Union of Good, a designated terrorist organization devoted to Hamas fundraising. *See id*. at ¶¶ 4-9, 66-85, 88-94, 96, 128-81, 375.

Unlike *Freeman*, where the defendant banks allegedly conspired to pad their own profits by evading Iranian sanctions, here Plaintiffs do not allege that Defendants pursued their illicit conduct simply to serve their own, or Qatar's, financial interests. Rather, Plaintiffs allege that "Defendants Masraf Al Rayan bank, Qatar National Bank, and Qatar Charity conspired with each other, Hamas, the government of Qatar and others ***to bring about acts of international terrorism against Americans in Israel***." *Id*. at ¶ 371 (emphasis added). *See also id*. at ¶¶ 1, 5, 9, 111, 132, 147, 154, 182. Plaintiffs also allege that Hamas and PIJ conspired with Defendants to commit acts of terrorism, including the attacks in which Plaintiffs and their family members were killed and injured. *See id*. at ¶ 111. *Compare Freeman*, 57 F.4th at 80 ("Nowhere in the Complaint, however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the Banks and Iranian entities evade U.S. sanctions."). Thus, unlike in *Freeman*, the attacks that injured Plaintiffs were overt acts in furtherance of Defendants' conspiracy to enable Hamas and PIJ to engage in violent acts of terrorism directed at U.S. citizens.

***Przewozman v. Qatar Charity*, 20-cv-6088, slip op. (E.D.N.Y. March 16, 2023)**

In *Przewozman*, Judge Garaufis held that the conduct the plaintiffs alleged did not satisfy the due process "minimum contacts" test for personal jurisdiction or the "arising from" prong of CPLR Section 302(a)(1). *See Przewozman*, 20-cv-6088, slip. op. [ECF 83-1] at 27, 31-32. In both respects, Judge Garaufis's reasoning focused on the approximately four-year time gap between the last alleged use of defendant Masraf al Rayan's ("Masraf") New York correspondent account and the terrorist attack that injured the *Prezwozman* plaintiffs. For purposes of the due process analysis under Rule 4(k)(2), Judge Garaufis concluded that the temporal gap precluded "a causal link between the use of the correspondent account, which ended in 2015, and the rocket attack[] that caused [plaintiffs'] injury in 2019." *Id*. at 31. With respect to CPLR 302(a)(1), Judge Garaufis concluded that "[t]his temporal gap leaves the nexus between the Defendants' New York related acts and Plaintiffs' injuries far too attenuated" to satisfy even *Licci II*'s admittedly "liberal" and "low" "'completely unmoored'" standard of "'relatedness.'" *Id*. at 26, 27 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012) (*"Licci II"*)).

Even assuming Judge Garaufis's reasoning on these points were correct—which it is not—his decision is irrelevant here because no such temporal gap exists between Masraf's use of its correspondent account and the attacks that injured Plaintiffs. The Defendants transferred millions

Honorable Brian M. Cogan
March 27, 2023
Page 3

of dollars through New York between 2009 and 2015.[1]  Most of the terrorist attacks that injured Plaintiffs occurred in 2014 and 2015, and the remainder occurred within one year after the last alleged New York transfer.  *See* Complaint at ¶¶ 183, 200, 209, 235, 247, 264, 281, 296, 321, 334.

As Plaintiffs highlighted in opposing Defendants' motions here and in *Przewozman*, the Supreme Court has flatly rejected Judge Garaufis's view that due process requires plaintiffs to allege a causal link between U.S.-based conduct and plaintiffs' injuries.  In *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court emphasized the disjunctive nature of the "arising out of or related to" standard for measuring minimum contacts.  141 S. Ct. 1017, 1026 (2021).  Thus, the Supreme Court held that "Ford's causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id.*  Here, as in *Przewozman*, the New York transfers are part of the conduct Plaintiffs will prove at trial to show Defendants' longstanding efforts to aid and abet Hamas and PIJ by providing financial services and financial resources, and the conspiracy that motivated that conduct.  Thus, personal jurisdiction over Defendants here comports with due process because the New York transfers undeniably "relate to" Defendants' violations of the Anti-Terrorism Act ("ATA") and JASTA.  *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171 (2d Cir. 2013) ("*Licci III*") (concluding that "minimum contacts" are met when "a lawsuit seeking redress for the allegedly unlawful provision of banking services of which . . . [New York] wire transfers are a part" alleges "repeated, intentional execution of U.S.-dollar-denominated wire transfers on behalf of [a customer], in order to further [an FTO's] terrorist goals").

*Przewozman's* CPLR § 302(a)(1) analysis suffers a similar flaw.  As with the minimum contacts test, Section 302(a)(1)'s nexus inquiry imposes a minimal burden on plaintiffs, who need only show that the New York transfers are not "completely unmoored" from their claims.  *Licci II*, 20 N.Y.3d at 339.  Plaintiffs satisfy that standard if *any* element of their claim "arises from the New York contacts."  *Id.* at 341 (emphasizing that "CPLR 302(a)(1) does not require that every element of the cause of action pleaded must be related to the New York contacts" and noting that "the specific harms suffered by plaintiffs flowed not from LCB's alleged support of a terrorist organization, but rather from [Hizballah] rockets").  Again, Judge Garaufis's analysis is irreconcilable with controlling precedent.  Plaintiffs will prove that Defendants violated the ATA and JASTA, in part, by introducing evidence concerning the illicit transfers through New York.  That connection between the New York transfers and Plaintiffs' claims suffices to satisfy CPLR 302(a)(1)'s nexus requirement.  *See id.* at 340 ("LCB engaged in terrorist financing by using its correspondent account in New York to move the necessary dollars.  Taken as true, LCB arguably thereby violated duties owed to plaintiffs under the various statutes asserted as a basis for subject matter jurisdiction.").

In addition to being at odds with *Licci*, Judge Garaufis's conclusion that—as a matter of

---

[1] The complaint in *Henkin v. Qatar Charity*, 21-cv-5716-AMD-VMS (E.D.N.Y.)—of which this Court may take judicial notice—alleges that $3.5 million worth of dollars and Euros belonging to Qatar Charity was transferred through New York to the Palestinian Territories beginning in 2009 and continuing through September 2015, at which point the Israeli security service's arrests and imprisonment of Qatar Charity staff in Ramallah put an end—at least temporarily—to such transfers.  *See* Bonner Exhibit 1 [ECF 67-1] at ¶¶ 130(c), 138-43.

Honorable Brian M. Cogan
March 27, 2023
Page 4

law—a four-year gap between defendants' last U.S.-based conduct and the attack in which plaintiffs were injured renders claims "unrelated to" or "unmoored from" the in-forum activity finds no support in the cases upon which the Court relies.  *See Przewozman*, slip. op. at 27 (citing *Strauss v. Crédit Lyonnais, S.A*., 175 F. Supp. 3d 3, 20, 23-24 (E.D.N.Y. 2016) (finding "a close relatedness" for purposes of CPLR 302(a)(1) between a $5,000 New York transfer executed in 1997 and the ATA claims of plaintiffs injured in a 2001 terrorist attack); *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd*., 2012 WL 6186598, at *4 (S.D.N.Y. Dec. 12, 2012) (no personal jurisdiction because the New York wire transfers ***preceded by ten years*** the challenged concealment of the defendant judgment debtor's assets, and the defendants were not alleged to have used New York transfers in connection with concealing the debtor's assets); *Daou v. BLC Bank, S.A.L*., 42 F.4th 120, 131(2d Cir. 2022) (New York transfers occurred ***before*** the defendant banks engaged in the fraud, conversion, breach of contract, and other unlawful conduct alleged in the complaint, and none of the plaintiffs' causes of action involved transfers of funds through New York correspondent accounts)).[2]

Although Judge Garaufis ultimately rejected Defendants' Section 302(a)(1) "purposeful availment" arguments, the *Przewozman* opinion expresses "serious doubts" as to the sufficiency of the allegations in this respect.  *See* slip. op. at 22-26.[3]  Those doubts primarily arise from artificial pleading burdens inconsistent with *Licci II* that Judge Garaufis posits.  *Licci II* does not require allegations concerning "how" a New York correspondent account was used (*see id.* at 22-23), beyond that the account was used "repeated[ly]," "deliberately," and not "once or twice by mistake."  20 N.Y.3d at 340.  Nor does *Licci II* require allegations indicating "***why*** the transfers were made 'through' New York."  *Przewozman*, slip. op. at 25.  *See* 20 N.Y.3d at 340 (irrespective of whether LCB could have routed the dollar transactions elsewhere, or used the New York account because it "was cheaper and easier," or provided "financial and other benefits," "the fact that LCB used a New York account 'dozens' of times indicates desirability and a lack of coincidence").

Far from requiring additional allegations "giving rise to the inference that Masraf al Rayan specifically chose a New York-based account to take advantage of 'New York's dependable and

---

[2]  The *dicta* in *Strauss* concerning New York transfers executed "'at a time far removed from the attacks that caused Plaintiffs' injuries'" (175 F. Supp. 3d at 20 (*quoted in Przewozman*, slip op. at 27)), is inapposite to the *Przewozman* complaint because it referred to a hypothetical situation similar to the fact patterns in *Universal Trading* and *Daou*: "if, for instance, one of the attacks for which Plaintiffs sought recovery occurred in 1992, ***five years before the first New York Transfer*** . . . the nexus between claims arising from the 1992 attack and a series of transfers that did not even begin to occur until five years later theoretically would be too attenuated to support jurisdiction under § 302(a)(1)."  *Strauss*, 175 F. Supp. 3d at 23 (emphasis added).  Here, and in *Przewozman*, Defendants' transfers preceded and/or were contemporaneous with the attacks that injured Plaintiffs.

[3]  But for his misguided concern regarding the "temporal gap" between the defendants' New York business transactions and the rocket attack that killed Pinches Przewozman, Judge Garaufis would have provided the plaintiffs the opportunity to flesh out their allegations concerning the number, value, and currency of the New York transfers by conducting jurisdictional discovery.  *See Przewozman*, slip. op. at 26.  The Court denied that discovery only because of the temporal gap the Court mistakenly viewed as dispositive.  To the extent this Court credits Defendants' arguments that such additional specificity is required, *Przewozman* and the precedent Plaintiffs discuss in their brief support permitting jurisdictional discovery.

Honorable Brian M. Cogan
March 27, 2023
Page 5

transparent banking system'" (*Przewozman*, slip. op. at 23 (quoting *Licci II*, 20 N.Y.3d at 339)), *Licci II* states that "complaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client . . . ***show purposeful availment of New York's dependable and transparent banking system*** …." 20 N.Y.3d at 339 (emphasis added). Judge Garaufis's critique that the *Przewozman* complaint fails to allege any of "the typical markers of deliberate use of [a] New York correspondent account" enunciated in *Vasquez v. H.K. & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 258 (S.D.N.Y. 2020) (*see Przewozman*, slip op. at 23-24) ignores the critical distinction between passive receipt of funds via a correspondent account—as occurred in *Vasquez* and *Amigo Foods Corp. v. Marine Midland Bank-N.Y.*, 39 N.Y.2d 391 (1979)—and the circumstances at issue in *Licci*, *Przewozman*, and this case, where defendants elected to use their own correspondent accounts to transfer funds for the benefit of terrorists and their supporters. *See Licci II*, 20 N.Y.3d at 338 (distinguishing *Amigo Foods* on the grounds that the defendant bank's "'passive'" receipt of funds in that case was "adventitious—i.e., it was not even [the bank's] doing")

Judge Garaufis also erred in criticizing the *Przewozman* complaint for "fail[ing] to show [that] 2015 (or earlier) transfers ***were used in the course*** of the 2019 rocket attacks." *Id.* at 27 (internal quotation omitted; emphasis added). Even for liability purposes, the Second Circuit has unequivocally rejected Defendants' argument that Plaintiffs must tie specific funds to the attacks that injured them. *See, e.g., Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 n.15 (2d Cir. 2021) (the bank's customers "do not themselves need to be 'engaged in . . . violent or terrorist acts'") (citation omitted); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 855 (2d Cir. 2021) (JASTA "simply says the defendant must have given 'substantial assistance'" to an act of international terrorism, not substantial assistance to the principal engaging in an act of international terrorism – *i.e.*, for aiding and abetting liability to attach under JASTA, a defendant's substantial assistance may be "indirect"); *see also Miller v. Arab Bank*, 372 F. Supp. 3d 33, 48 (E.D.N.Y. 2019) (Cogan, J.) (defendants "may be liable under the ATA for aiding and abetting the organization behind the attacks, not only the 'triggerman' or suicide bomber"). As this Court and many others have recognized, it "would be impossible" for ATA plaintiffs to "trace specific dollars to specific attacks," which is why they are not required to do so, even to establish proximate cause. *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 328 (E.D.N.Y. 2015) (Cogan, J.).

Judge Garaufis also states in *dicta* that the Przewozman complaint "fails to allege in a non-conclusory manner any facts from which an inference of agreement between Qatar National Bank and the other defendants can be drawn." *Przewozman*, slip op. at 37. This observation appears to arise from a misunderstanding of the elements of conspiracy liability as recently confirmed in *Freeman*. For example, Judge Garaufis faults the *Przewozman* complaint for making "no attempt to factually tie the Qatari government or royal family to the rocket attacks" or to allege "a connection between Qatar National Bank and the [New York] transfers effected by Masraf." *Id*. at 38. As explained above, the Second Circuit's recent decision in *Freeman* confirms that no such allegations are necessary. 57 F.4th at 78 ("[T]here is no requirement that each member of a conspiracy . . . be aware of all acts committed in furtherance of the conspiracy ….") (internal quotation omitted). In any event, as explained above and in Plaintiffs' brief in opposition, Plaintiffs have plausibly alleged a wealth of facts supporting each Defendant's participation in a Qatar-sponsored conspiracy to promote Hamas and PIJ terrorism. *See supra* at page 2.

Honorable Brian M. Cogan
March 27, 2023
Page 6

                                                 Respectfully submitted,

                                                 James P. Bonner

CC:  All counsel of record (via ECF)